916 So.2d 1156 (2005)
SORRENTO COMPANIES, INC. D/B/A Louisiana Stone & Aggregate
v.
HONEYWELL INTERNATIONAL, INC., Bear Industries, Inc., Barry Moore, II, Meric Daigle, & Moore Testing & Inspection.
No. 2004 CA 1884.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
*1159 Guy E. Wall, Paul E. Bullington, Jonathan R. Cook, New Orleans, Counsel for Plaintiffs/1st Appellants Sorrento Companies, Inc. d/b/a Louisiana Stone & Aggregate.
Troy J. Charpentier, Baton Rouge, Counsel for Defendant/2nd Appellant Honeywell International, Inc.
David M. Cohn, M. Virginia Kelly, Baton Rouge, Counsel for Defendants/Appellees Bear Industries, Inc., Barry L. Moore, Sr.,[1] and Moore Testing & Inspection.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In the instant action, plaintiff appeals the trial court's granting of defendants' exceptions raising the objections of improper cumulation of actions and improper venue. Additionally, defendant, Honeywell International, Inc., appeals the trial court's granting of a preliminary injunction in favor of plaintiff. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
On July 1, 1990, Louisiana Synthetic Aggregates, Inc., predecessor to Sorrento Companies d/b/a Louisiana Stone and Aggregate (LSA), and Allied-Signal, Inc., predecessor to Honeywell International, Inc. (Honeywell), entered into a contract, whereby Honeywell gave LSA the exclusive right to purchase and remove fluorogypsum[2] from Honeywell's Geismar, Louisiana, plant. The duration of this contract was for nine years and six months commencing on July 1, 1990, and from year to year thereafter, subject to cancellation effective January 1, 2000, or any January 1 thereafter by either party with ninety-day written notice. Additionally, the contract provided that Honeywell could earlier terminate the contract for other enumerated reasons. Specifically, the contract provided that if LSA failed to achieve and maintain *1160 certain levels of fluorogypsum removal, LSA would lose its exclusive rights and Honeywell could terminate the contract. Further, Honeywell and LSA entered into a lease agreement, whereby Honeywell leased a ten-acre track of land to LSA to be used for processing, storage, and transporting of fluorogypsum generated by Honeywell.
Thereafter, on May 17, 1996, Honeywell sent a letter to LSA, receipt of which is disputed, stating that since LSA had failed to achieve or maintain the contractually required levels, Honeywell was exercising its option to revoke LSA's exclusive rights to the fluorogypsum; however, all other conditions and requirements of the contract were to remain in effect. In March of 2002, Honeywell again sent a letter to LSA indicating that because it produces more fluorogypsum than LSA can handle, it would place an advertisement in the Baton Rouge Advocate newspaper requesting proposals to determine if other parties were interested in mining and marketing this product. Further, Honeywell indicated that if the successful proposal was from someone other than LSA, then Honeywell would proceed with termination of their contract. Thereafter, Honeywell sent a letter to LSA in March of 2003 indicating that the contract was being terminated. However, because of an outstanding contract that LSA had with F.G. Sullivan for a Louisiana Department of Transportation and Development project on Highway 190 in Pointe Coupee, Louisiana, Honeywell agreed to extend the contract through July 31, 2003. Honeywell sent a final letter to LSA dated July 1, 2003, indicating that Honeywell would not extend the contract beyond the July 31, 2003 date. However, this letter also indicated that Honeywell was in the process of negotiating with other contractors for the mining and marketing of fluorogypsum, and had no objection to LSA making arrangements with the new contractor to allow LSA to continue to supply F.G. Sullivan with material for its Highway 190 project.
The new contractor selected by Honeywell to continue mining and marketing fluorogypsum was Bear Industries, a company owned and controlled by Barry Moore, Sr. and his sons. Barry Moore, Sr., through his company Barry L. Moore & Associates,[3] performed testing of materials, including Florolite, for LSA during LSA's contract with Honeywell, and at times prior thereto.
After LSA became aware that Honeywell was terminating its contract and that Bear Industries had been selected as the new contractor, LSA filed suit against Honeywell, Meric J. Daigle, Bear Industries, Barry L. Moore, Sr., and Moore Testing & Inspection claiming: Honeywell was not entitled to terminate the fluorogypsum agreement or lease; Honeywell modified the terms of the fluorogypsum agreement; Moore Testing & Inspection, Barry Moore, Sr., and Bear Industries (collectively Moore defendants) misappropriated LSA's trade secrets and intellectual property, breached their obligations to LSA, breached their duty of good faith and fair dealing, committed unfair trade practices, and committed tortious interference with contract. In their petition, LSA sought a temporary restraining order, preliminary injunction, declaratory judgment, and damages. Thereafter, Honeywell and the Moore defendants filed exceptions to LSA's petition. Following a hearing, the *1161 trial court signed a judgment granting the exceptions raising the objections of improper cumulation of actions and improper venue and denying all other exceptions. Additionally, the trial court granted a preliminary injunction in part in favor of LSA, enjoining Honeywell from barring or restricting access to LSA to process and mine sufficient fluorogypsum to fulfill its contractual requirements with F.G. Sullivan.
LSA now appeals from this judgment asserting that the trial court erred in granting the defendants' exceptions raising the objections of improper cumulation of actions and improper venue. Additionally, Honeywell appeals from the trial court's granting in part of LSA's preliminary injunction.

DISCUSSION

Improper Cumulation of Actions and Improper Venue
Whether a plaintiff may cumulate two or more causes of action against multiple defendants is governed by La. C.C.P. art. 463, which provides:
Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
(1) There is a community of interest between the parties joined;
(2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
(3) All of the actions cumulated are mutually consistent and employ the same form of procedure.
To determine whether the defendants in the instant matter have a community of interest, the question must be asked: do the cumulated causes of action arise out of the same facts, or do they present the same factual and legal issues. First Guaranty Bank v. Carter, 563 So.2d 1240, 1242 (La.App. 1st Cir.1990).
LSA asserts that a community of interest exists because the defendants conspired or acted in concert to violate LSA's exclusive contract rights and misappropriate LSA's trade secrets, i.e. Florolite mining process. However, from our review of the record, particularly the testimony and documentary evidence admitted at the hearing, we do not find that the trial court manifestly erred in determining that there was insufficient evidence to establish a conspiracy.
Absent the allegation of conspiracy, defendants clearly do not have a community of interest. The claims asserted against Honeywell are based on the contract between Honeywell and LSA and whether the contract was extended and whether it was breached. However, the claims against the Moore defendants, involve complex issues of unfair trade practices, misappropriation of trade secrets, and breach of confidentiality. Clearly, these claims do not involve the same legal issues and are based on different factual information. Therefore, because no community of interest exists, we find no error in the trial court's decision to grant the exception raising the objection of improper cumulation of actions.
According to La. C.C.P. art. 464, if the court lacks jurisdiction or venue is improper as to one of the cumulated actions, that action shall be dismissed. However, if cumulation is improper for any other reason, i.e. no community of interest, the trial court should order separate trials or have the plaintiff elect which action to proceed with. In the instant case, LSA contends that the trial court erred in dismissing their action against the Moore defendants. However, before we can determine if dismissal is proper, we must first address the trial court's granting of Barry Moore, Sr., Bear Industries, and Moore Testing & Inspection's *1162 exception raising the objection of improper venue.[4]
The general rules for venue are set forth in La. C.C.P. art. 42, which provides, in part, that a suit against a domestic corporation shall be brought in the parish where its registered office is located. Michael F. Smith, CPA v. Alford, 04-0586, p. 2 (La.App. 1st Cir.3/24/05), 906 So.2d 674, 675. Additionally, supplementary venue provisions are contained in La. C.C.P. arts. 71-85, and plaintiffs may choose any other supplementary venue provided by law that fits the particular circumstances of their claims. Cacamo v. Liberty Mutual Fire Insurance Co., 99-3479, 99-3480, 99-3481, p. 5 (La.6/30/00), 764 So.2d 41, 44.
In the instant case, LSA asserts that the supplementary venue provisions found in La. C.C.P. arts. 74[5] and 76.1 are applicable. Article 74 provides, in part, that "[a]n action for recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained." Article 76.1 provides that "[a]n action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract."
A plaintiff invoking the provisions of Articles 74 and 76.1 must allege sufficient facts to prove that the chosen venue is proper. See Strasner v. State, 99-1099, p. 7 (La.App. 1st Cir.6/23/00), 762 So.2d 1206, 1211, writ denied, 00-2195 (La.10/27/00), 772 So.2d 125. If the grounds for an objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. Alford, 04-0586 at p. 3, 906 So.2d at 676. The trial court is not bound to accept as true allegations in a petition on a trial of an exception. It is only when no evidence is introduced by the moving party on the trial of an exception that the allegations of the petition are accepted as true. Price v. Roy O. Martin Lumber Co., 04-0227, p. 13 (La.App. 1st Cir.4/27/05), 915 So.2d at 825.
A review of LSA's petition shows that the only facts alleged regarding venue are the parishes of each Moore defendants' domicile, which are East Baton Rouge or West Baton Rouge Parish. LSA asserts that the Moore defendants committed offenses, but do not allege where any of this wrongful conduct occurred or where LSA suffered any damage as a result of the Moore defendants' alleged acts. Nevertheless, at the hearing, the Moore defendants did introduce evidence on the venue exception. The testimony and documentary evidence showed that correspondence between Honeywell and the Moore defendants took place from their Baton Rouge and Port Allen offices, Bear Industries representatives met with Honeywell at a Restaurant in East Iberville Parish, Bear Industries' proposal was submitted to *1163 Honeywell in Baton Rouge, Bear Industries' presented its proposal in Baton Rouge, and Barry Moore, Sr. visited Honeywell's Geismar plant after they had been awarded the mining contract. Further, the evidence established that testing performed by Barry L. Moore & Associates and Moore Testing & Inspection (Moore Testing) for LSA was conducted in Moore Testing's lab in Baton Rouge. The record does not contain any evidence that Moore Testing performed any on-site tests in Ascension parish for LSA. It was not until briefs were filed with this court that LSA asserted any wrongful conduct committed by the Moore defendants was committed in Ascension parish or that it sustained damage there as a result of any alleged wrongful conduct. See Jackson v. Home Depot, Inc., 04-1653, p. 6 (La.App. 1st Cir.6/10/05), 906 So.2d 721, 725 (stating that as a general rule, appellate courts may not consider issues raised for the first time on appeal.)
Further, we find that LSA failed to allege facts sufficient to show that venue is proper in accordance with La. C.C.P. art. 76.1. The petition makes reference to a contract between LSA and Moore Testing, but it makes no reference to where any such contract was executed. Additionally, from the evidence submitted at the hearing, it does not appear that the contract was performed in Ascension Parish, but as stated earlier, was performed in Moore Testing's Baton Rouge lab.
Therefore, from our thorough review of the record, we find that the trial court was correct in granting the Moore defendants' exception raising the objection of improper venue. As such, we find that dismissal of LSA's claims against the Moore defendants, without prejudice, was the appropriate remedy. See La. C.C.P. art. 464 and revision comments.

Preliminary Injunction
Honeywell also appeals the trial court's granting of a preliminary injunction in favor of LSA, asserting that the trial court abused its discretion in granting the preliminary injunction because LSA failed to prove irreparable injury and failed to make a prima facie showing that it would prevail on the merits. Honeywell further alleges the trial court erred in failing to narrowly tailor the preliminary injunction.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage, if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270, p. 6 (La.App. 1st Cir.3/24/05), 906 So.2d 660, 664. The writ of injunction is a harsh, drastic, and extraordinary remedy, and should only issue in those instances where the moving party is threatened with irreparable loss or injury, and is without adequate remedy at law. Conway v. Stratton, 434 So.2d 1197, 1198 (La.App. 1st Cir. 1983). "Irreparable injury" is considered to be a loss sustained by an injured party, which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard. SREF Bon March Co. v. D.H. Holmes Co., 572 So.2d 284, 287 (La.App. 1st Cir.1990), writ denied, 576 So.2d 45 (La.1991).
Appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. Concerned Citizens for Proper Planning, LLC, 04-0270 at p. 5, 906 So.2d at 663-664.
*1164 From our review of the record in this matter, we find that the trial court abused its discretion in determining that LSA showed it will suffer irreparable injury if it is not allowed to continue processing and mining fluorogypsum in order to complete performance of its contract with F.G. Sullivan. LSA contends on appeal that it would suffer business losses and would be unable to fulfill its contract with F.G. Sullivan, subjecting it to a lawsuit for breach against which it is unable to defend. However, at the hearing on this matter, Jeffrey Melancon, operations manager for LSA, testified as to the amounts of money invested and expended by LSA. Additionally, the contract between LSA and F.G. Sullivan was entered into evidence. This contract showed the amount that was to be paid under the contract, and detailed liability, and how liability would be calculated, for failure to perform the contract as required. LSA did not submit any other evidence to suggest that its damages could not be adequately compensated in money damages, or that any damages could not be measured by a pecuniary standard. As such, the trial court erred in determining that LSA showed irreparable injury.
LSA contends on appeal, however, that it was not required to show irreparable injury because the preliminary injunction protects LSA's rights in immovable property. Louisiana Code of Civil Procedure article 3663 provides, in part:
Injunctive relief under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had or more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.
Louisiana Code of Civil Procedure article 3660 states that "[a] person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof ... and possesses for himself." (Emphasis added.)
LSA contends on appeal that it comes within Article 3663(2) as having possessed the property at issue for over ten years. LSA acknowledges that it was in possession of the property in question by virtue of a lease agreement with Honeywell. As such, LSA was a precarious possessor. See La. C.C. arts. 3437 and 3438. According to Articles 3437 and 3438, a precarious possessor, such as a lessee, exercises possession over a thing with the permission or on behalf of the owner and is presumed to possess for another, though he may intend to possess for himself. Clearly, though LSA corporeally possessed the property for over ten years, it did not do so for itself, but rather possessed for another. Therefore, LSA cannot establish that it was disturbed in possession that it and its ancestors in title had for more than a year. Further, LSA does not possess a real right in the immovable property,[6] as a *1165 contract of lease establishes personal rights only. Richard v. Hall, 03-1488, p. 17 (La.4/23/04), 874 So.2d 131, 145. Therefore, article 3663 does not apply to the instant case.[7]
LSA also asserts that it was not required to show irreparable harm because the clear and unequivocal terms of the lease were being breached. Particularly, LSA contends that because Honeywell agreed to extend the contract and lease to permit it to complete its contract with F.G. Sullivan, a preliminary injunction was proper to prohibit Honeywell from breaching this extension and the underlying contracts upon which it is based. However, from our review of the testimony and documentary evidence submitted at the hearing, we do not find that such terms are "clear and unequivocal." Particularly, the letter sent by Honeywell on July 1, 2003, states that it will not extend the flourogypsum lease agreement with LSA beyond July 31, 2003, and that this is Honeywell's final decision. However, Honeywell states later in the letter that it has no objection with LSA making suitable arrangements with the new contractor in order to allow LSA to continue to supply F.G. Sullivan with material for its project. A plain reading of this letter alone establishes that any contract, if in fact there is found to still be one after July 31, 2003, was not "clear and unequivocal." Accordingly, we find this argument to be without merit.
Therefore, because we find that LSA failed to show irreparable harm as required by La. C.C.P. art. 3601, the trial court abused its discretion in granting a preliminary injunction.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court, granting defendants exceptions raising the objections of improper cumulation of actions and improper venue and dismissing LSA's claims against the Moore defendants without prejudice. However, we reverse the portion of the trial court's judgment, granting a preliminary injunction in favor of LSA. All costs of this appeal are to be borne equally by Sorrento Companies, Inc. d/b/a Louisiana Stone & Aggregate and Honeywell International, Inc.
AFFIRMED IN PART; REVERSED IN PART.
KUHN, J., concurs.
PETTIGREW, J., concurs with results.
NOTES
[1] At the hearing of this matter, Barry Moore, Sr. was substituted for Barry Moore, II.
[2] Fluorogypsum is a waste by-product existing at Honeywell's Geismar plant. LSA used fluorogypsum to make a lightweight aggregate material called "Florolite," or calcium sulfate, which is used mainly in road construction projects.
[3] Barry L. Moore & Associates is the predecessor to defendant, Moore Testing & Inspection. According to the record, Barry Moore, Sr. transferred his interest in Barry L. Moore & Associates to his ex-wife pursuant to a community property settlement. Upon transfer, the name was changed to Moore Testing & Inspection.
[4] At the hearing of the exception, the trial court indicated that it specifically was not addressing whether venue was proper based on the individual claims asserted against the Moore defendants. Rather, the trial court was only addressing venue as it related to the cumulated claim, conspiracy. However, because the judgment simply grants the exception of improper venue, and the parties raise the issues on appeal, we will fully address whether venue is proper as to the Moore defendants based on all claims asserted against them.
[5] At the outset, we note that courts have found that claims for unfair trade practices come within La. C.C.P. art 74. See Long Leaf Vending, Inc. v. Louisiana Coca-Cola Bottling Co., 97-1359, p. 3 (La.App. 4th Cir.4/8/98), 709 So.2d 366, 368; United Brotherhood of Carpenters Local Union No. 1846 v. Caldwell, 552 So.2d 462, 465 (La.App. 4th Cir.1989).
[6] LSA also asserts on appeal that because of a right of way granted to it by Honeywell, allowing LSA to cross over Honeywell property to access the leased premises, it has a real right within Article 3663(2). However, LSA's ability to access the right of way is not the basis upon which the injunction was sought or granted. LSA was really attempting to enjoin Honeywell from: barring or restricting LSA's access to the process area; forcing LSA to cease and desist operations at Honeywell's plant; permitting any third party from obtaining or processing fluorogypsum; and violating the terms of the fluorogypsum agreement. Therefore, we find this argument to be without merit.
[7] Likewise, we find that LSA's argument that because it is seeking specific performance, it is not required to show irreparable injury to be misplaced. The case relied on by LSA was decided based on the application of Article 3663(2).