950 So.2d 41 (2007)
Glynn R. CYPRIEN
v.
BOARD OF SUPERVISORS OF the UNIVERSITY OF LOUISIANA SYSTEM and Nelson J. Schexnayder, Jr.
No. 2005-CA-1247.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 2007.
*42 Scott P. Yount, Darrin L. Forte, Preston & Cowan, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Stephen J. Oats, Robin L. Jones, Oats & Hudson, Lafayette, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY and Judge LEON A. CANNIZZARO Jr.).
MICHAEL E. KIRBY, Judge.
Plaintiff, Glynn Cyprien, appeals the trial court judgment, granting the exception of improper venue filed by defendants, Board of Supervisors of the University of Louisiana System, Nelson J. Schexnayder, Jr. and Elwood J. Broussard, and transferring this case to Lafayette Parish.
On August 13, 2004, plaintiff filed an original petition for damages against defendants, Board of Supervisors of the University of Louisiana System and Nelson J. Schexnayder, Jr., alleging breach of contract and defamation claims. This case stems from a written employment contract dated May 19, 2004 in which plaintiff was hired by the Board of Supervisors for the University of Louisiana System as the men's head basketball coach at the University of Louisiana at Lafayette ("ULL"). Defendant Schexnayder is the ULL Athletic Director. According to the plaintiff's petition, Mr. Schexnayder unilaterally terminated plaintiff's contract on July 16, 2004 without cause, justification or reason after receiving information regarding plaintiff's educational background and qualifications. Plaintiff also claims that the Board of Supervisors of the University of Louisiana System breached its contract with plaintiff in failing to pay him all amounts owed for work performed by plaintiff prior to July 16, 2004. Plaintiff claims that the actions of Mr. Schexnayder and the Board of Supervisors of the University of Louisiana System render the Board liable to plaintiff for damages for *43 breach of contract as stipulated in the employment contract.
Plaintiff's original petition also included a defamation claim against defendant Schexnayder. This claim stems from statements allegedly made by Schexnayder to reporters from various media outlets, including The Times-Picayune of New Orleans, The Advertiser of Lafayette and WWL Radio in New Orleans. According to the petition, Mr. Schexnayder told reporters that plaintiff lied on his resume, overstated his qualifications and otherwise failed to provide ULL with accurate information concerning plaintiff's education and job experience. Plaintiff alleges that the statements allegedly made by Mr. Schexnayder were false and made with malice in an attempt to smear plaintiff's name and reputation in the media so as to limit the Board's financial exposure, establish a false predicate for terminating plaintiff's contract and to mitigate Mr. Schexnayder's personal responsibility for hiring plaintiff.
In a first supplemental and amending petition filed on October 26, 2004, plaintiff added Elwood J. Broussard as a defendant in his defamation claim. Broussard is the ULL Director of Purchasing and Personnel Services. Plaintiff's claim against Broussard is based on a letter sent by Broussard to the Unemployment Insurance Service for the State of Oklahoma. This letter was sent in conjunction with a proceeding involving an application for unemployment compensation benefits, which plaintiff made following his termination at ULL. Plaintiff left a coaching position at Oklahoma State University when he accepted the ULL coaching position. According to plaintiff's first supplemental and amending petition, Broussard stated in the letter at issue that plaintiff "intentionally and fraudulently misrepresented pertinent information regarding his educational background and achievements in his application for employment." Plaintiff claims that this statement was known by Broussard to be false, and was made in an attempt to defeat plaintiff's claim for unemployment benefits made in the State of Oklahoma.
Plaintiff also claimed in his first supplemental and amending petition that defendant Schexnayder defamed him in a hearing related to plaintiff's unemployment claim. Plaintiff alleges that Mr. Schexnayder testified in that hearing that plaintiff provided false and misleading information to ULL regarding his education credentials in order to secure the position of head basketball coach, that Mr. Schexnayder knew his testimony was false and that his false statements were made in an attempt to defeat plaintiff's claim for unemployment compensation benefits.
Defendants filed numerous exceptions to plaintiff's petitions, including an exception of improper venue, or in the alternative, an exception of forum non conveniens. Defendants argued that Orleans Parish is not a parish of proper venue for plaintiff's claims, and that his lawsuit should be dismissed. Alternatively, defendants argued that if the court determined that venue is proper in Orleans Parish, then the doctrine of forum non conveniens dictates that this matter be transferred to Lafayette Parish. Plaintiff opposed the exceptions, arguing that Orleans Parish is the proper venue for this lawsuit.
Following a hearing on the exceptions, the trial court granted the defendants' exception of improper venue, and ordered that all open issues in this matter be transferred to Lafayette Parish. In reasons for judgment, the trial court stated that Lafayette Parish is the proper venue for this matter as the primary defendants, Mr. Schexnayder and Mr. Broussard, are residents of Lafayette Parish, the contract was *44 executed in Lafayette Parish and the cause of action arose in Lafayette Parish. The court found that under the terms of the contract, plaintiff's job was to be performed in Lafayette, as he was hired to coach the men's basketball team at the University of Louisiana in Lafayette. Plaintiff now appeals.
On appeal, plaintiff argues that the trial court erred in granting the defendants' exception of improper venue because the facts of this case dictate that venue is proper in Orleans Parish under La. C.C.P. articles 74 and 76.1. Plaintiff also argues that the trial court erred in utilizing the doctrine of forum non conveniens to transfer the case to Lafayette Parish. Alternatively, plaintiff argues that if this Court finds that Orleans Parish is an improper venue, the case should be transferred to East Baton Rouge Parish where venue is proper pursuant to La. R.S. 13:5104.
We first note that there is no indication in the trial court's judgment that the doctrine of forum non conveniens was utilized. The trial court found that venue was improper in Orleans Parish and transferred the matter to Lafayette Parish. Accordingly, plaintiff's argument that the trial court improperly utilized the doctrine of forum non conveniens in this case is without merit.
The de novo standard of review is applicable in a case involving the granting of an exception of improper venue. Premier Dodge, L.L.C. v. Perrilloux, XXXX-XXXX (La.App. 4 Cir. 1/25/06), 926 So.2d 576, citing Crawford v. Blue Cross and Blue Shield of Louisiana, 2000-2026 (La. App. 4 Cir. 12/5/01), 814 So.2d 574. The general rules of venue are set forth in La. C.C.P. article 42. However, La. C.C.P. article 43 states that these general rules are subject to the exceptions provided in articles 71 through 85 and as otherwise provided by law. The exceptions set forth in La. C.C.P. articles 74 and 76.1 are pertinent to this case.
La. C.C.P. article 74 states, in pertinent part, as follows:
An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained.
La. C.C.P. article 76.1 states:
An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract.
In arguing that venue is proper in Orleans Parish under La. C.C.P. article 74, plaintiff states that wrongful conduct occurred and damages were sustained by him to his reputation in his hometown of New Orleans when allegedly defamatory remarks made by Mr. Schexnayder at a Lafayette press conference and to a reporter by telephone were published in the New Orleans Times-Picayune and circulated in Orleans Parish. He also argues that wrongful conduct occurred in Orleans Parish when Mr. Schexnayder testified by telephone from New Orleans in plaintiff's Oklahoma unemployment hearing, and allegedly made defamatory comments about plaintiff to all those participating in the telephone hearing.
We find merit in plaintiff's argument that venue is proper in Orleans Parish due to allegedly defamatory statements made by Mr. Schexnayder during a hearing on plaintiff's Oklahoma unemployment claim in which Mr. Schexnayder participated by telephone from New Orleans. The four elements necessary to establish a claim for defamation are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third *45 party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy v. Sheriff of East Baton Rouge, XXXX-XXXX (La.7/10/06), 935 So.2d 669, 674. A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Id.
The defendants in this case argue that the statements made by Mr. Schexnayder at the telephone hearing on the unemployment claim are subject to an absolute privilege because they were made in an administrative hearing. Plaintiff refutes this argument, stating that there has been no ruling in this matter classifying the statements made at the unemployment hearing as privileged.
In the afore-mentioned case of Kennedy v. Sheriff of East Baton Rouge, XXXX-XXXX (La.7/10/06), 935 So.2d 669, 681, the Louisiana Supreme Court noted that an absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings, whereas a conditional or qualified privilege arises in a broader number of instances. Our review of the jurisprudence shows that statements made in the context of an unemployment hearing are subject to a qualified privilege. Melder v. Sears, Roebuck and Company, 98-0939 (La.App. 4 Cir. 3/31/99), 731 So.2d 991; Wright v. Bennett, XXXX-XXXX (La. App. 1 Cir. 9/28/05), 924 So.2d 178.
In Williams v. Touro Infirmary, 578 So.2d 1006, 1010 (La.App. 4 Cir.1991), this Court explained qualified privilege as follows:
Under a qualified privilege defense certain statements which might otherwise be deemed defamatory are protected because the circumstances of the communication show an underlying public policy incentive for protection. In effect, assertion of a qualified privilege amounts to rebuttal of the allegation of malice. The public's interest and social necessity mandate that an employer not be unreasonably restricted when required to provide information for a state agency to determine in a quasi-judicial proceeding whether a terminated employee should receive unemployment benefits. The employer must be free to make a complete and unrestricted communication without fear of liability in a defamation suit even if the communication is shown to be inaccurate, subject to the requisites that the communication is in good faith, is relevant to the subject matter of the inquiry and is made to a person (or agency) with a corresponding legitimate interest in the subject matter. Boyd v. Community Center Credit Corporation, 359 So.2d 1048 (La.App. 4th Cir.1978).
A review of the transcript of the unemployment hearing in which Mr. Schexnayder and several others participated by telephone shows that Mr. Schexnayder made statements calling into doubt plaintiff's honesty regarding his educational background. In plaintiff's first supplemental and amending petition, he alleges that Mr. Schexnayder's statements at the hearing were false and made with malice in an attempt to defeat plaintiff's claim for unemployment benefits. Although Mr. Schexnayder's statements are subject to a qualified privilege, this privilege is subject to the requirement that the communication be made in good faith. Because plaintiff has alleged that the requirement of good faith was not satisfied in Mr. Schexnayder's communications at the hearing, the issue of qualified privilege is one that will have to be decided at trial.
*46 In this appeal, we are not called upon to determine if plaintiff can carry his burden of proving his defamation and breach of contract claims against the defendants. This matter is before us only on the issue of venue. In Sorrento Companies, Inc. v. Honeywell International, Inc., XXXX-XXXX, p. 7 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1162, the First Circuit summarized the rules regarding burden of proof when the provisions of La. C.C.P. articles 74 and 76.1 are invoked as follows:
A plaintiff invoking the provisions of Articles 74 and 76.1 must allege sufficient facts to prove that the chosen venue is proper. See Strasner v. State, 99-1099, p. 7 (La.App. 1st Cir.6/23/00), 762 So.2d 1206, 1211, writ denied, 00-2195 (La.10/27/00), 772 So.2d 125. If the grounds for an objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. Alford, 04-0586 at p. 3, 906 So.2d at 676 [Michael F. Smith, CPA v. Alford, 04-0586 (La.App. 1 Cir. 3/24/05), 906 So.2d 674]. The trial court is not bound to accept as true allegations in a petition on a trial of an exception. It is only when no evidence is introduced by the moving party on the trial of an exception that the allegations of the petition are accepted as true. Price v. Roy O. Martin Lumber Co., 04-0227, p. 13 (La.App. 1st Cir.4/27/05), 915 So.2d at 825.
The record on appeal does not include a transcript of the hearing on the defendants' exception of improper venue. Plaintiff alleged facts sufficient to prove that venue is proper in Orleans Parish. The defendants had the burden of offering evidence to establish that venue is not proper in Orleans Parish. Our review of the record shows that they failed to do so.
Considering plaintiff's allegations regarding Mr. Schexnayder's statements made at the unemployment hearing and the fact that Mr. Schexnayder was in New Orleans when he made those statements, venue for this case is proper in Orleans Parish under La. C.C.P. article 74. Accordingly, we find that the trial court erred in granting defendants' exception of improper venue.
Because we find venue is proper in Orleans Parish based on the statements made by Mr. Schexnayder in New Orleans at the telephone hearing on plaintiff's unemployment claim, we need not address plaintiff's claims regarding whether venue is proper in Orleans Parish under La. C.C.P. article 76.1 because his contract required him to recruit and play games in New Orleans[1] or under La. C.C.P. article 74 because statements made by Mr. Schexnayder about plaintiff to a reporter in a telephone interview were published by the Times Picayune and circulated in New Orleans.
For these reasons, we reverse the trial court's judgment granting defendants' exception of improper venue, and remand this case to the trial court for further proceedings.
REVERSED AND REMANDED.
ARMSTRONG, J., dissents.
ARMSTRONG, C.J., dissenting.
I respectfully dissent. I would affirm the judgment of the trial court.
NOTES
[1] We note that the record on appeal does not include a copy of the employment contract signed by all parties.