934 So.2d 779 (2006)
Howard P. ELLIOTT, Jr.
v.
AMATO AND CREELY, a Professional Law Corporation, and Madro Bandaries.
No. 2005 CA 0376.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
*780 Paul H. Spaht, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, for Plaintiff-Appellee Howard P. Elliott, Jr.
Anna E. Dow, Baton Rouge, Madro Bandaries, Gretna, for Defendants-Appellants Amato & Creely, APLC, and Madro Bandaries.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
In this declaratory judgment action regarding disputed attorney fees, the defendants, Amato and Creely, A Professional Law Corporation (Amato), and Madro Bandaries (Bandaries), appeal a judgment overruling their declinatory exception raising the objection of improper venue. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Howard P. Elliott, Jr., a Baton Rouge attorney, filed suit in the Nineteenth Judicial District Court in East Baton Rouge Parish, seeking a declaratory judgment that in the event there is any recovery by the plaintiffs in certain pending lawsuits, then he is entitled to his agreed-upon share of the attorney fees from Amato and Bandaries.[1] The petition alleges that the Amato firm is a professional law corporation with its registered office and law office in Jefferson Parish, and that Bandaries is a resident of Orleans Parish whose law office was formerly located in Baton Rouge, Louisiana (East Baton Rouge Parish), and is now located in Gretna, Louisiana (Jefferson Parish). Elliott claims that in two class action cases, the Ring case[2] and the Saliah case,[3] he served as co-counsel with Amato and Bandaries, representing the plaintiffs pursuant to contingency fee contracts. Elliott further claims that although he is willing to continue assisting in both cases, Amato and Bandaries have refused to permit him to participate further and have refused to acknowledge or confirm his attorney fee interest in the cases. Elliott also states in his petition that most of the legal services provided by him in connection with these cases were performed in East Baton Rouge Parish.
Amato and Bandaries filed an exception raising the objection of improper venue. *781 Amato stated that its registered office is in Jefferson Parish. Bandaries stated that he does not practice law as an individual, but practices as Madro Bandaries, A Professional Law Corporation, which corporation is registered in Orleans Parish.[4] Therefore, they contended venue was improper in East Baton Rouge Parish, as the only proper venues for this proceeding would be in Jefferson Parish and/or Orleans Parish. Elliott argued that two special venue provisions applied, because he had executed agreements among the attorneys and performed work in East Baton Rouge Parish pursuant to those agreements, and/or because the wrongful conduct had occurred and he had sustained and would sustain damages in East Baton Rouge Parish. After two hearings[5] at which evidence was submitted, the court overruled the exception. This appeal followed.

APPLICABLE LAW
Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject. LSA-C.C.P. art. 41; Cacamo v. Liberty Mut. Fire Ins. Co., 99-3479 (La.6/30/00), 764 So.2d 41, 44. The objection to improper venue is raised by a declinatory exception. LSA-C.C.P. art. 925. A judgment overruling a declinatory exception raising the objection of improper venue is an appealable judgment, because it is an interlocutory judgment that may cause irreparable injury. Frederic v. Zodiac Dev., 02-1178 (La.App. 1st Cir.2/14/03), 839 So.2d 448, 451 n. 3; A & P Boat Rentals, Inc. v. American Lloyd's, 592 So.2d 1361, 1362 (La.App. 1st Cir. 1991). Venue is a question of law, which is reviewed de novo by the appellate court. Price v. Roy O. Martin Lumber Co., 04-0227 (La.App. 1st Cir.4/27/05), 915 So.2d 816, 824. However, the trial court's factual findings underlying the decision are reviewed under the manifest error standard of review. See Peters v. Alpharetta Spa, L.L.C., 04-0979 (La.App. 1st Cir.5/6/05), 915 So.2d 908, 910.[6]
Plaintiffs may choose any venue available under the Code of Civil Procedure or any other supplementary venue provided by law that fits the particular circumstances of their claims. Cacamo, 764 So.2d at 44; Price, 915 So.2d at 824. Generally, an action against an individual who is domiciled in the state should be brought in the parish of his domicile or residence, and an action against a domestic corporation should be brought in the parish where its registered office is located. See LSA-C.C.P. art. 42(1) and (2). The general rules of venue set out in Article 42 are subject to certain exceptions. LSA-C.C.P. art. 43. These alternative statutory venue provisions are an extension, supplement, and legal part of the general venue provisions, rather than exceptions requiring strict construction. Jordan v. Central Louisiana Elec. Co., Inc., 95-1270 (La.6/23/95), 656 So.2d 988, 989; Operational Technologies Corp. v. Environmental *782 Contractors, Inc., 95-0413 (La.App. 1st Cir.11/9/95), 665 So.2d 14, 15.
One of these additional venue provisions is stated in Article 76.1, which allows an action on a contract to be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract. This supplementary venue provision reflects the policy decision of the legislature that it is fair to sue a corporate defendant who enters into contracts with an aggrieved plaintiff in a venue other than the defendant's home base. Cacamo, 764 So.2d at 44. Such a contract may be verbal or written, State ex rel. Ieyoub v. Justiss Oil Co., Inc., 95-0345 (La.App. 1st Cir.11/9/95), 665 So.2d 68, 70, and may be executed in more than one parish. Michael F. Smith, CPA v. Alford, 04-0586 (La.App. 1st Cir.3/24/05), 906 So.2d 674, 675. For example, if one party signs a contract in one parish and the other party signs it in another parish, venue is proper in either parish where the document was executed. See Jordan, 656 So.2d at 989. For a verbal agreement, venue is proper where either party was located at the point in time at which a valid contract was created between the parties. See Ieyoub, 665 So.2d at 70. Another supplemental venue provision allows an action for the recovery of damages for an offense or quasi offense to be brought in the parish where the wrongful conduct occurred or in the parish where the damages were sustained. LSA-C.C.P. art. 74.
A plaintiff invoking the provisions of Articles 74 and 76.1 must allege sufficient facts to prove that the chosen venue is proper. Sorrento Companies, Inc. v. Honeywell Intern., Inc., 04-1884 (La.App. 1st Cir.9/23/05), 916 So.2d 1156, 1162. For the purposes of determining a proper venue, the plaintiff's allegations are taken as true. See Cacamo, 764 So.2d at 45. If the grounds for an objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. Jewell v. Dudley L. Moore Ins. Co., 95-2453 (La.App. 1st Cir.6/28/96), 676 So.2d 223, 225, writ denied, 96-2015 (La.11/8/96), 683 So.2d 273.

ANALYSIS
The petition in this case alleges the existence of a contractual arrangement among Elliott, Amato, and Bandaries to serve as co-counsel and share any attorney fees that might be generated in two lawsuits. It also sets out the terms of those agreements, and states that Elliott provided significant legal services to the plaintiffs and assisted in the prosecution of both cases. The petition also claims that Elliott performed most of those legal services in East Baton Rouge Parish, where his office is located and where one of the suits is filed. With these allegations, Elliott has stated facts that, if proven, would bring his claim within the provisions of Louisiana Code of Civil Procedure article 76.1 and allow the matter to proceed in East Baton Rouge Parish, his chosen venue. Therefore, the grounds for an objection of improper venue do not appear on the face of the petition, and the defendants had the burden of offering evidence in support of their position.
The defendants argue, however, that the grounds for the objection do appear on the face of the petition, because Elliott has correctly alleged that Amato is a domestic corporation registered in Jefferson Parish and Bandaries is domiciled in Orleans Parish and practices law out of an office in Jefferson Parish. Therefore, East Baton Rouge Parish is not a proper venue under the provisions of Article 42, and the grounds of the objection are stated. This *783 argument ignores the fact that there are many other venue provisions authorizing specific types of claims to be brought in other venues. If the allegations of the petition bring the claim within one of those alternative venue provisions, the grounds of the objection no longer appear on the face of the petition, and the defendant is required to offer evidence in support of its position.
The defendants in this case have simply failed to do so, while, in contrast, Elliott has provided voluminous evidence to support his contention that venue is proper in East Baton Rouge Parish under Article 76.1. Elliott testified that another Baton Rouge attorney referred the Ring case to him. After investigating the factual and legal issues involved in the case, which he did from his office in Baton Rouge, Elliott obtained Ring's permission to associate other attorneys and to use him as the named plaintiff in a class action suit. A letter confirming this was signed by Ring on May 29, 2000, and sent to Elliott at his Baton Rouge address. Other correspondence among the attorneys and to the Louisiana agency involved in the lawsuit confirmed Elliott's testimony that much of his work on the case was done from his office in Baton Rouge. Letters and memoranda from Amato and Bandaries concerning the case were sent to Elliott at his Baton Rouge office address. Elliott testified that he attended status conferences and two hearings on motions for summary judgment, all of which occurred at the court in East Baton Rouge Parish. A letter from Bandaries on Amato's letterhead was sent to the court on December 5, 2001, referring to Elliott as "our associate," and indicating Elliott would present a judgment to the court for signature in the Ring case.
With reference to the Saliah case, Elliott testified that it was a "continuation of the Norris case." His only direct role in Saliah was as a "consultant" before the suit was filed in Orleans Parish. That participation was mostly by telephone from his Baton Rouge office. However, Amato told Elliott that his continued assistance was unnecessary, and consequently, he did not perform much legal work on the case after it was filed. Robert G. Creely, a member of the Amato firm, testified that on the Norris case, there was an agreement to share fees among several attorneys, including Elliott. In connection with Creely's testimony, the document evidencing that agreement (the Norris fee agreement) was introduced. The Norris fee agreement was dated March 28, 2000, and was signed by all the attorneys involved. Creely said he signed it at his office in Jefferson Parish. However, Elliott testified that he signed the Norris fee agreement in Baton Rouge. That document specifically listed two lawsuits in which Norris was a plaintiff, and stated further:
These 2 lawsuits (or at least one of them) shall be converted into a class action and Kenneth A. Goodwin and Amato & Creely shall be added as counsel of record.
B. There are potentially other financial institutions and third parties who may be joined as defendants for other class action lawsuits yet to be filed by the above-listed attorneys.
The exact percentages to be allocated to each of the attorneys, including Elliott, were detailed in the Norris fee agreement. In connection with Elliott's testimony, the petition for the Norris suit in the Nineteenth Judicial District Court was submitted into evidence. Elliott was attorney of record on that lawsuit; he said Bandaries worked extensively on this case with him. Eventually this court provided a favorable judgment on appeal, and it was then that Elliott and Bandaries enlisted the assistance *784 of the Amato firm to handle the Norris case and similar cases as class actions against Union Planters Bank. Elliott stated it was clearly understood that the team of attorneys who signed the Norris fee agreement would proceed with a different named plaintiff in the future and that there would be additional lawsuits covered by the fee agreement. He said Saliah was the first of those subsequent lawsuits, as evidenced by a later proposed fee agreement for the case that was circulated to all the involved attorneys, including Elliott, in a letter from Kenneth A. Goodwin on October 5, 2000.[7] Elliott said Bandaries brought him the original of that document and he signed it at his office in Baton Rouge, but did not see the document after the other attorneys had executed it. The allegations of the Saliah petition tracked the allegations previously made in the Norris case. Later, Amato and Bandaries told him his services were not needed, and that he would have no involvement in the Saliah litigation.
The preceding is merely a representative sampling of the evidence submitted in this case. The only document submitted by Amato and Bandaries was the Norris fee agreement. They may be correct in asserting that this document does not prove the existence of a contract on the Saliah case; they argue that until and unless Elliott proves he had an enforceable contract with Amato and Bandaries, he has failed to satisfy the requirements of Article 76.1. But this argument reverses the burden of proof, and puts the cart before the horse. At this stage of the proceeding, Elliott does not have to definitively prove the existence or enforceability of a contract or contracts. Those are the substantive issues for trial on the merits. For purposes of a choice of venue, the plaintiff's allegations in the petition are taken as true, and unless the face of the petition reveals the grounds for the objection as to venue, the defendant must establish that the plaintiff's chosen venue is not proper. The evidence submitted here demonstrates the factual underpinnings for Elliott's choice of East Baton Rouge Parish as the venue for his claims that he is entitled to share in the attorney fees that might be generated from the Ring and/or Saliah cases.[8] We find no error in the judgment overruling the venue exception.

CONCLUSION
The judgment overruling the exception raising the objection of improper venue is affirmed. All costs of this appeal are assessed to Amato and Bandaries.
AFFIRMED.
NOTES
[1] This lawsuit is one of three filed in the Nineteenth Judicial District Court involving similar disputes among these parties concerning attorney fees. The other two suits are Howard P. Elliott, Jr. v. Madro Bandaries, Docket No. 514,190, and Carl Walther v. Department of Labor and Department of Civil Service, Docket No. 468,223. The three law-suits were consolidated for handling in Division J. However, the venue exception involved in this appeal concerns only one of the lawsuits. A similar exception was filed by the defendant in Docket No. 514,190, and was overruled. A writ application to this court was denied. Elliott v. Bandaries, 04-0625 (La.App. 1st Cir.4/19/04) (unpublished writ action) ("On the showing made, we find no error.") In the Walther case, a judgment was rendered in favor of Elliott and against Bandaries on the attorney fee issue, and an appeal of that judgment is pending under this court's docket number 2005 CA 0739.
[2] Gary L. Ring v. State of Louisiana, Department of Transportation and Development, No. 481,767, Division J, Nineteenth Judicial District Court, East Baton Rouge Parish, Louisiana.
[3] Tarig Maurice Saliah v. Union Planters Bank, No. 01-118, Division I, Civil District Court for the Parish of Orleans, Louisiana.
[4] The petition alleged and evidence in the record confirms that Bandaries works as a "contract attorney" for the Amato firm at its offices.
[5] An initial hearing on some discovery motions and the venue exception was held on March 15, 2004, with Elliott testifying briefly. The hearing on the exception was continued and eventually resumed on August 31, 2004.
[6] Although the Peters case and the jurisprudence cited therein dealt with the declinatory exception raising the objection of lack of jurisdiction over the person, if a court makes factual findings in order to reach a conclusion concerning venue, those findings, like any other factual findings, should also be subject to the manifest error standard of review. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
[7] By this time, other attorneys had also been enlisted to assist with the class action litigation against Union Planters Bank. Therefore, a new fee-sharing agreement was needed.
[8] Because we find venue is proper under LSA-C.C.P. art. 76.1, we pretermit discussion of whether venue might also be proper under Article 74.