939 So.2d 437 (2006)
NOVELAIRE TECHNOLOGIES, L.L.C.
v.
Martin Kenneth HARRISON, Barbara Bucklin & Essential Humidity Solutions, L.L.C.
No. 06-CA-94.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 2006.
*439 A. Justin Ourso, III, David M. Kerth, Baton Rouge, Louisiana, for Plaintiff/Appellee.
Glen R. Galbraith, Hammond, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Defendants appeal a judgment dismissing their declinatory exception of improper venue and their dilatory exception of improper cumulation of actions. For the following reasons, we affirm.

Factual and Procedural History
On June 9, 2004, NovelAire Technologies, L.L.C. ("NovelAire") filed suit in the Nineteenth Judicial District Court in East Baton Rouge Parish against defendants, Martin Kenneth Harrison ("Harrison"), Barbara J. Bucklin ("Bucklin"), and Essential Humidity Solutions, L.L.C. ("EHS"). The petition alleges that NovelAire is a limited liability company organized under the laws of the State of Georgia, with its principal business establishment in Baton Rouge, Louisiana; that Harrison and Bucklin are domiciled in Livingston Parish and are members of EHS; and that EHS is a Louisiana limited liability company, managed by its members, with its registered office in Livingston Parish.
NovelAire, a manufacturer of energy recovery and dehumidification equipment, including desiccant dehumidifiers, employed Harrison as a designer in its engineering department in Baton Rouge, Louisiana. Harrison's job duties included making improvements to the company's product line. During his employment with NovelAire, the company developed a dehumidifier line, the DH-50, with a casing made of extruded aluminum, and began selling it to Harrison's former employer, AAR, Corp.
NovelAire alleges in its petition that while working for NovelAire, Harrison entered into a written agreement ("Agreement") with the company, under which (1) all improvements that Harrison conceived or made relating to NovelAire's business were the property of NovelAire, and (2) Harrison was obliged not to disclose or use any confidential information of NovelAire without the written consent of NovelAire.
NovelAire further alleges the following: While employed by NovelAire, Harrison engaged in secret product development to pursue a business opportunity for himself. More specifically, while working for NovelAire, and on company time, Harrison used materials, resources, and equipment of NovelAire to secretly develop an improved design of the DH-50 and to manufacture parts for the new design, without reporting this improvement to NovelAire. Further, Harrison enlisted the assistance of a friend and employee of AAR Corp., to make inquiries of potential suppliers for components of the improved design; the results of these inquiries were communicated to Harrison at NovelAire. Bucklin also assisted Harrison, and on February 5, 2004, Harrison and Bucklin organized EHS to use the improved design to compete with NovelAire. NovelAire asserts four causes of action in six claims: breach of contract and breach of fiduciary duties claims against Harrison; unfair and deceptive trade practice claims against Harrison, Bucklin, and EHS; and, an intentional interference with contract claim against Bucklin.
On May 12, 2005, defendants filed two exceptions, a declinatory exception of improper venue and a dilatory exception of improper cumulation of actions. Defendants *440 assert venue is not proper in East Baton Rouge Parish for all claims pled against defendants; consequently, the actions have been improperly cumulated.
At the hearing on the exceptions, Harrison testified that while employed by NovelAire in Baton Rouge, he began developing ideas that would be improvements to NovelAire's DH-50 dehumidifier; one such idea was to create a sheet metal dehumidifier. In 2003, without informing anyone in management, he used his computer at NovelAire to work on drawings for a new sheet metal casing for a dehumidifier. He placed the drawings into a computer file on NovelAire's computer network which contained drawings for NovelAire's DH-125, a dehumidifier that was still undeveloped. He then had these drawings converted into machine readable code by asking Brian Chassaniol ("Chassaniol"), a fellow designer in NovelAire's engineering department, to convert the DH-125 file drawings. Harrison subsequently enlisted Chassaniol's assistance to operate a NovelAire punch press machine, and punch out the sheet metal casing parts. Chassaniol confirmed this in his testimony, stating that in late March 2003 Harrison asked that he convert some drawings for a DH-125 into machine code.
Rick Thomas Granier testified that he works in the machine shop at NovelAire and that in March 2003 he observed Harrison and Chassaniol punching out sheet metal parts. When he asked Chassaniol what they were working on, "[h]e said it was a special unit that NovelAire didn't know about, that they would never ever know about."
Harrison later took the parts to a NovelAire brake press operator to bend them in accordance with Harrison's drawings. He then stored the parts at NovelAire, where they remained because, "they didn't bend up correctly." Harrison stated "[t]here was a lot of work to be done on creating that idea using sheet metal."
Harrison testified that he also had an idea for a dual voltage heater; this was part of his effort to create a more "all-in-one type unit." The DH-50, as NovelAire sold it, had separate models for different voltages. Harrison had sample dual voltage heaters delivered to an electronics store rather than NovelAire, and he received an email at NovelAire with test data on a dual voltage heater. This email was part of several exhibits offered into evidence by NovelAire. NovelAire introduced emails to and from Harrison at his office at NovelAire regarding vendors for dehumidifier supplies. Also, NovelAire introduced email correspondence between Harrison at his NovelAire office and Bucklin at her Baton Rouge office regarding the new business.
Harrison further testified that he submitted his letter of resignation to NovelAire on January 23, 2004, effective February 6, 2004. He stated that it was only upon resigning that he decided to go into business for himself. Harrison testified that he did not finish designing a new and improved version of the DH-50 while at NovelAire and left the bent metal sheets, as well as the machine code for punching out the metal parts, at NovelAire. After leaving NovelAire, he continued to work on developing a working dehumidifier at a shop at Bucklin's house in Livingston Parish; after several weeks, he was successful in his efforts. Harrison now manufactures the dehumidifiers "start to finish" at the shop in Livingston Parish. Vendors referenced in his pre-resignation email correspondence, now provide supplies for his dehumidifier.
Terry Leon Parker, Director of Manufacturing and Technology at NovelAire testified that in April 2003 he asked Harrison about cost reduction improvement *441 ideas for the DH-50. He stated that, "we went over all the major components in it, including whether or not we needed to use extrusion, or if there was ways to cut our extrusion, cost reductions on the heater, the motor, fans, and control board." Parker testified that Harrison told him that "the extrusion was a non-starter with AAR," NovelAire's sole customer for the DH-50 at that time. Parker also testified that he assembled the sheet metal parts that Harrison punched out at NovelAire and left behind at the company, into the casing for a dehumidifier and they fit.
Two Baton Rouge vendors for EHS testified. William J. Mattox, II ("Mattox"), founder and director of Inkontrol, Inc. (Inkontrol), a Baton Rouge business, testified that in 2003 and for several years prior, Inkontrol sold printed circuit boards to NovelAire for use in its DH-50 dehumidifier. The company now sells the circuit boards to EHS. Mattox stated that he and Harrison discussed dual voltage in 2003; he also identified a copy of Inkontrol's order entry log reflecting that Harrison first ordered printed circuit boards for his new business on January 20, 2004, prior to his letter of resignation, dated January 23, 2004. Fred Harry Bauerle, branch manager at a Ralph's Industrial Electronic's Supplies ("Ralph's"), testified that Bucklin started picking up parts for EHS at his store in Baton Rouge a "little bit after" March of 2004.
Bucklin testified that she is a founding member of EHS and in charge of "most" of the financial aspects of the business. Her job duties for EHS include preparing the monthly state sales tax reports, paying all bills, and handling banking matters. She further testified that she signed each of the packing slips associated with Inkontrol invoices at Inkontrol's in Baton Rouge. Included in the record are copies of Inkontrol invoices, billable to EHS, with signed packing slips. The dates on the invoices and packing slips range from April 12, 2004 to November 22, 2004. Bucklin also identified her signature on EHS checks issued to Inkontrol in payment for printed circuit boards purchased by EHS. The copies of the checks included in the record range in date from June 3, 2004 to August 24, 2004. Further, Bucklin testified that she signed for and picked up merchandise for EHS from Ralph's in the vendor's Baton Rouge office. The purchase order, dated May 31, 2005, and the signed invoice, dated June 1, 2005, are included in the record.
In a judgment dated July 5, 2005, the trial court dismissed both exceptions. Defendants appealed, alleging that the judgment may cause irreparable injury, pursuant to La.C.C.P. art. 2083(A)[1]. The appeal was granted on July 5, 2005, returnable to the Court of Appeal, First Circuit. On January 31, 2006, the Supreme Court of Louisiana, after considering that all of the judges of the Court of Appeal, First Circuit had recused themselves, transferred the matter to this Court.
Law and Analysis
Cumulation of actions is the joinder of separate actions in the same judicial demand. La.C.C.P. art. 461. In order to cumulate multiple actions against the same defendant and/or join multiple defendants in the same suit, each of the actions cumulated must be brought in the proper venue. La.C.C.P. arts. 462 and 463. When the venue is improper as to one of the actions *442 cumulated, that action shall be dismissed. La.C.C.P. art. 464.
In the instant case, defendants do not dispute that venue is proper for the breach of contract claim against Harrison. However, they assert that venue is improper for the remaining five cumulated claims, i.e., the breach of fiduciary duties claim against Harrison, the unfair and deceptive trade practice claims against Harrison, Bucklin, and EHS, and the intentional interference with contract claim against Bucklin. Accordingly, defendants contend that these five improperly cumulated claims should be dismissed, or the entire suit should be transferred to Livingston Parish.
Because venue is a question of law, the appellate court should conduct a de novo review of the record. Elliott v. Amato and Creely, 05-0376, (La.App. 1 Cir. 3/29/06), 934 So.2d 779; Boes Iron Works, Inc. v. Travelers Cas. And Sur. Co. of America, 05-782 (La.App. 5 Cir. 3/28/06), 927 So.2d 553, 555. Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject. La. C.C.P. art. 41. Generally, an action against an individual who is domiciled in the state shall be brought in the parish of his domicile, and an action against a domestic limited liability company shall be brought in the parish where its registered office is located. La.C.C.P. art. 42(1) and (2). However, these general rules are subject to certain exceptions, which are an extension, supplement, and legal part of the general venue provisions, rather than exceptions requiring strict construction. La.C.C.P. art. 43; Elliott v. Amato and Creely, 05-0376 (La.App. 1 Cir. 3/29/06), 934 So.2d 779. A plaintiff may choose any supplementary venue provided by law that fits the particular circumstances of his claims. Sorrento Companies, Inc. v. Honeywell Intern., Inc., 04-1884 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1162, writ denied, 05-2326 (La.3/17/06), 925 So.2d 541.
In the present matter, plaintiff asserts venue is proper pursuant to La. C.C.P. arts. 74 and 76.1. La.C.C.P. art. 74 provides, in pertinent part:
An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. An action to enjoin the commission of an offense or quasi offense may be brought in the parish where the wrongful conduct occurred or may occur.
La.C.C.P. art. 76.1 provides that, "[a]n action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract." A plaintiff invoking the provisions of La.C.C.P. arts. 74 and 76.1 must allege sufficient facts to prove that the chosen venue is proper. Sorrento Companies, Inc. v. Honeywell Intern., Inc., 916 So.2d at 1162.
As stated infra, defendants contend that venue is not proper for the breach of fiduciary duties claim, the unfair and deceptive trade practice claims, and intentional interference with contract claim.
In its petition, NovelAire asserts that Harrison owed fiduciary duties of loyalty and good faith to his employer, NovelAire, including a duty not to compete with his employer during his employment or to injure his employer. NovelAire further asserts that during and after his employment with NovelAire, Harrison breached these fiduciary duties. Some breaches of a fiduciary are classified as ex delicto, while others are ex contractu. Young v. Adolph, 02-67 (La.App. 5 Cir. 5/15/02), 821 So.2d *443 101, 106. The distinction is that ex contractu breaches arise from the breach of a special obligation between the parties and ex delicto breaches from the violation of a general duty. Id. It appears that NovelAire's breach of fiduciary duties claim is delictual in nature. However, for analysis purposes we will consider proper venue for both ex contractu and ex delicto breaches by a fiduciary. If the breach of fiduciary duty claim is considered ex contractu, then the action on the contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract. La.C.C.P. art. 76.1. Therefore, as with the breach of contract claim against Harrison, venue would be proper in East Baton Rouge Parish. If the breach of fiduciary duty is considered delictual in nature, then the action for the recovery of damages may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained. La.C.C.P. art. 74. NovelAire alleges that Harrison was guilty of wrongful conduct during his employment in East Baton Rouge Parish. Therefore, venue is proper in East Baton Rouge Parish.
In addition to the breach of contract and fiduciary duties claims, NovelAire asserts unfair and deceptive trade practice claims against all three defendants and an intentional interference with contract claim against Bucklin. In cases alleging unfair trade practices, as well as tortious interference with contract claims, venue has been found to be proper under La.C.C.P. art. 74, in the parish where the wrongful conduct or breach of duty occurred. Long Leaf Vending, Inc. v. Louisiana Coca-Cola Bottling Co., 97-1359 (La.App. 4 Cir. 4/8/98), 709 So.2d 366, 368.
NovelAire contends that the use by Harrison, EHS, and Bucklin of the secretly developed design and Harrison's disclosure of this design to others, was and continues to be an unfair trade practice that was intended to harm NovelAire in violation of the Louisiana Unfair Trade Practices law. The secret development and disclosure of this design to others is alleged to have occurred in East Baton Rouge Parish. Therefore, we find that venue for NovelAire's unfair and deceptive trade practice claims against the defendants is proper in East Baton Rouge Parish.
Further, NovelAire alleges that Bucklin intentionally interfered in the performance by Harrison of his Agreement with NovelAire. In support of this contention, NovelAire cites certain conduct by Bucklin in East Baton Rouge Parish, e.g., e-mail correspondence between Bucklin's East Baton Rouge Parish office and Harrison's East Baton Rouge Parish office, which are included in the record. There are multiple e-mails on the subject of naming the company, and in one such e-mail, dated April 29, 2003, Bucklin advises Harrison to, "[m]ake sure you double delete all of this from your e-mail." We find that plaintiff has alleged sufficient facts to prove that East Baton Rouge Parish is the proper venue for NovelAire's intentional interference with contract claim against Bucklin.
Accordingly, we affirm the judgment of the trial court dismissing defendants' declinatory exception of improper venue and their dilatory exception of improper cumulation of actions.
AFFIRMED.
NOTES
[1] La.C.C.P. art. 2083(A), at the time this appeal was filed, provided that, "[a]n appeal may be taken . . . from an interlocutory judgment which may cause irreparable injury." By Acts 2005, No. 205, § 1, eff. Jan. 1, 2006, La.C.C.P. art. 2083 was amended to provide, "[a]n interlocutory judgment is appealable only when expressly provided by law."