| | | |
|---|---|---|
| **HASSAN REFAEY** | * | **NO. 2024-CA-0839** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LIQUIMAR TANKERS** | * | |
| **MANAGEMENT SERVICES,** | | **FOURTH CIRCUIT** |
| **INC.** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-10889, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**LOBRANO, J., CONCURS IN THE RESULT**

Neil F. Nazareth
Scott R. Bickford
Lawrence J. Centola, III
Jason Z. Landry
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, LA 70130

Michael Patrick Doyle (pro hac vice)
Patrick M. Dennis (pro hac vice)
DOYLE DENNIS AVERY LLP
3401 Allen Parkway, Suite 100
Houston, TX 77019


        COUNSEL FOR PLAINTIFF/APPELLANT

Stephen Robert Barry
Daphne McNutt Barry
BARRY ROME & SCOTT, LLC
612 Gravier Street
New Orleans, LA 70130

George M. Chalos (pro hac vice)
Britton P. Sparkman (pro hac vice)
CHALOS & CO, PC
55 Hamilton Avenue
Oyster Bay, NY 11771

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**MAY 13, 2025**

Plaintiff/Appellant, Hassan Refaey (hereinafter "Mr. Refaey"), seeks review of the trial court's September 16, 2024 judgment granting a declinatory exception of improper venue filed by Defendant/Appellee, Liquimar Tankers Management Services, Inc. (hereinafter "Liquimar Tankers"). After consideration of the record before this Court and the applicable law, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

**<u>Facts and Procedural History</u>**

This is a maritime personal injury case. Mr. Refaey is a marine engineer and a resident of the Arab Republic of Egypt. On September 25, 2022, Mr. Refaey signed a "Seafarer Employment Agreement" (hereinafter "employment agreement") with Liquimar Tankers and Evridiki Navigation, Inc. (hereinafter "Evridiki") to work as a marine engineer aboard a Liberian-flagged oil tanker, M/T Evridiki. The M/T Evridiki (hereinafter "the vessel") is owned by Evridiki and operated by Liquimar Tankers. Evridiki and Liquimar Tankers are both foreign corporations organized under the laws of Liberia and share a principal place of business in Athens, Greece.

1

On September 23, 2023, Mr. Refaey filed a petition for damages against Liquimar Tankers asserting claims of negligence; maintenance and cure; and breach of contract under General Maritime Law. Mr. Refaey alleges that he sustained injuries to his hand while working inside the engine room aboard the vessel.[1] Specifically, he maintains that a fellow employee slammed a butterfly valve into his right hand which resulted in the amputation of part of his finger. Mr. Refaey contends that venue is proper in Orleans Parish as he was denied medical treatment by various employees of Liquimar Tankers "[o]nce the vessel berthed in Louisiana."[2]

In response, Liquimar Tankers filed declinatory exceptions of improper venue and lack of personal jurisdiction.[3] The exception of improper venue provides that: (1) Mr. Refaey's claims are subject to the forum selection clause of the employment agreement; (2) the proper venue, in accordance with the forum selection clause, is the within "the jurisdiction of the competent Courts of Nicosia Cyprus;" and (3) Mr. Refaey's petition fails to allege that the injury occurred in Orleans Parish. Mr. Refaey objected to the exception asserting that the forum selection clause does not apply to the claims in his petition against Liquimar Tankers, the vessel's operator. He argues that the wording of the venue provision of the forum selection clause is exclusively for claims between a "Seafarer" and

---

[1] According to Mr. Refaey, the accident occurred on December 16, 2022.

[2] Mr. Refaey asserts that he was denied medical care until January 10, 2023. He eventually received an x-ray and antibiotics at a clinic in Marrero, Louisiana. After the accident, Mr. Refaey contends that he began experiencing severe pain in his right arm, elbow and shoulder; has suffered physical impairment from the injury and delays in medical care; has been forced to receive follow up treatment and surgeries; is unable to hold any tools in his dominant hand; and experiences emotional distress regarding his injury, treatment and future financial security. He also received medical care, after finishing his assignment aboard the vessel, in Spain in February 2023 and in Egypt in April 2023.

[3] Liquimar Tankers' exception of lack of personal jurisdiction is not relevant to this appeal.

the "Shipowner," Evridiki. Mr. Refaey contends that Orleans Parish is a proper venue since he was repeatedly denied medical care near the Louisiana shoreline.

After a hearing on the exceptions, the trial court granted Liquimar Tankers' exception of improper venue, dismissed Mr. Refaey's claims without prejudice and pretermitted discussion of the declinatory exception of lack of personal jurisdiction. This suspensive appeal followed.

## Standard of Review

"Venue is a question of law and where a legal error interdicts the fact finding process and the record is otherwise complete, an appellate court should then conduct a *de novo* review." *Scott Vicknair, LLC v. Robinson*, 2024-0512, p. 8 (La.App. 4 Cir. 3/13/25), ___ So.3d ___, ___, 2025 WL 798593, at *4 (quoting *Anaya v. Legg Mason Wood Walker, Inc.*, 2007-0654, p. 18 (La.App. 4 Cir. 5/14/08), 985 So.2d 281, 291). "But, 'the trial court's factual findings underlying the decision are reviewed under the manifest error standard of review.'" *Id.* (quoting *Arc Indus., L.L.C. v. Nungesser*, 2006-1353, p. 2 (La.App. 3 Cir. 11/21/07), 970 So.2d 690, 693).

## Discussion

Mr. Refaey asserts three assignments of error on appeal. In his first two assignments of error, Mr. Refaey maintains the trial court erred by enforcing the forum selection clause in his employment agreement. Mr. Refaey next asserts the trial court erred in concluding that the wrongful conduct, as alleged in his petition, did not occur in Orleans Parish. In reviewing Mr. Refaey's assignments of error, we find the dispositive issue to be whether the language of his employment agreement dictates venue as to his claims against Liquimar Tankers. For ease of

discussion, we will analyze Mr. Refaey's assignments of error as follows: (1) Forum Selection Clause and (2) Venue.

## *Forum Selection Clause*

Mr. Refaey argues that the forum selection clause within his employment agreement does not dictate venue for his claims against Liquimar Tankers. Rather, he contends that the forum selection clause dictates venue for claims against the "Shipowner," Evridiki. Liquimar Tankers conversely maintains that the forum selection clause clearly and unambiguously dictates venue for Mr. Refaey's claims.[4] The forum selection clause provides in pertinent part:

> ARTICLE 23: DISPUTES/JURISDICTION
>
> 23.1 Any dispute regarding the interpretation of this agreement, which may not be solved amicably, shall be settled under the terms of the PNO TCC Collective Agreement 2022-2023 as same may be amended from time to time.
>
> 23.2 The Seafarer agrees that any dispute arising under this agreement or otherwise shall be resolved through friendly negotiations.
>
> 23.3 Notwithstanding the foregoing, the Shipowner and the Seafarer agree that if every effort has been exerted to amicably resolve such dispute and if no solution has been agreed, such disputes, suits, legal proceedings of claims whatsoever involving death, personal injury, permanent or temporary disability and illness of the Seafarer, shall be resolved, litigated, or pursued, if at all, in accordance with the terms of the PNO TCC Collective Agreement 2022-2023 as same may be amended from time to time and both the Shipowner as well as the Seafarer voluntarily submit themselves to the jurisdiction of the competent Courts of Nicosia Cyprus to the exclusion of any other jurisdiction worldwide.

---

[4] Liquimar Tankers argues it should be afforded the same rights as the owner of the vessel because it is also party to Mr. Refaey's employment agreement as the "agent" of Evridiki. We find no merit to Liquimar Tankers' contention that the forum selection clause is enforceable under the principle of equitable estoppel. While Liquimar Tankers is a party to Mr. Refaey's employment agreement, there is no indication that it can be classified as the owner of the vessel under this Court's interpretation of the employment agreement.

The trial court considered the "PNO TCC Collective Bargaining Agreement 2022-2023" (hereinafter "the CBA agreement") and the Maritime Labour Convention, 2006 (hereinafter "MLC") to determine the definition of the term "Shipowner."[5] The trial court concluded, in accordance with the MLC, that the term "Shipowner" can be defined as an entity other than the owner of the ship, i.e., an organization that manages and/or operates a vessel. We disagree.

"Contracts have the effect of law for the parties, and the interpretation of a contract is the determination of the common intent of the parties." *Bonilla v. Verges Rome Architects*, 2023-00928, p. 3 (La. 3/22/24), 382 So.3d 62, 65 (citations omitted). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* (quoting La. C.C. art. 2046). "The words of a contract must be given their generally prevailing meaning." La. C.C. art. 2047. The general, ordinary, plain and popular meaning of the words in a contract dictates the common intent of the parties. *Bonilla*, 2023-00928, p. 3, 382 So.3d at 65 (citation omitted). "The meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence." *Halpern v. Jonathan Ferrara Gallery, Inc.*, 2019-1066, p. 6 (La.App. 4 Cir. 12/30/20), 365 So.3d 568, 573 (quoting *Tolar v. Tolar*, 25935 (La.App. 2 Cir. 6/22/94), 6389 So.3d 399, 401); La. C.C.P. art. 1848. If the clause in a contract is

---

[5] The CBA agreement states that it was constructed in accordance with the Maritime Labour Convention, 2006. The Maritime Labour Convention, 2006 is a treaty that embodies "as far as all possible up-to-date standards of existing international maritime labour Conventions and Recommendations, as well as the fundamental principles to be found in other international labour Conventions." *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 591 (5th Cir. 2023), *cert denied*, 144 S.Ct. 487, 217 L.Ed.2d 255 (2023) (Jones, J., dissenting) (citation omitted).

5

clear and unambiguous, the clause should not be disregarded. *Bonilla*, 2023-00928, p. 3, 382 So.3d at 66 (citation omitted).

In interpreting the words of a contract, individual provisions of a contract "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract . . . ." La. C.C. art. 2053. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." La. C.C. art. 2056. "[I]t is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Bonilla*, 2023-00928, pp. 3-4, 382 So.3d at 66 (quoting *Prejean v. Guillory*, 2010-0740, p. 7 (La. 7/2/10), 38 So.3d 274, 279). Thus, "[c]ourts lack the authority to alter the terms of a contract under the guise of interpretation and should not create ambiguity where none exists." *Id.*, 2023-00928, p. 4, 382 So.3d at 66 (citation omitted).

Section 23.1 of Mr. Refaey's employment agreement states that disputes regarding interpretation of the agreement shall be resolved under the terms of the CBA agreement. The CBA agreement and Mr. Refaey's employment agreement do not provide a definition for the term "Shipowner." Rather, the CBA Agreement collectively identifies the terms "owner" and "operator" as the "Company."[6]

---

[6] The CBA agreement states in pertinent part:

> This Collective Bargaining Agreement (CBA), (hereinafter the "Agreement") sets out the standard terms and conditions applicable to all Seafarers serving on any

Considering the language of Mr. Refaey's employment agreement, we find the term "Shipowner" is best defined in the plain meaning of the words – the owner of the ship. Other provisions of Mr. Refaey's employment agreement support this conclusion. Section 9.1 of the employment agreement states that "[t]he Managers of the Vessel have the right to transfer the Seafarer to any other vessel (regardless of flag) being under the same management with the [v]essel . . . ." The employment agreement further differentiates the rights and responsibilities of the "Managers," "Shipowners" and "Masters." Reviewing the employment agreement as a whole reveals that a "Shipowner" differs from the manager of the vessel. Moreover, Section 1.4 of the CBA agreement only defines the term "Seafarer" while declining to define other words such as "Shipowner."

To determine the applicability of the forum selection clause, the trial court considered the MLC which defines a "Shipowner" as one who owns, operates or manages a vessel.[7] Such an interpretation ignores the rules of contractual interpretation in Louisiana's Civil Code. *See* La C.C. arts. 2046-2050. To reach the conclusion that the forum selection clause was applicable, it appears the trial court considered the MLC – an instrument that was not presented into evidence by either party. *See Halpern*, 2019-1066, p. 6, 365 So.3d at 573 (citation omitted) (finding that the intent of the parties within a contract shall not be contradicted by parol evidence); La. C.C. art. 1848. Moreover, a court shall not create an ambiguity

---

ship of which there is in existence a Special Agreement made between International Transport Workers' Federation (hereinafter the "ITF') and the owner or operator (hereinafter "the Company").

[7] The MLC indicates that a "Shipowner" can be considered as an operator or manager of a vessel*;* however*,* while Egypt, Liberia and Greece are all signatories of the MLC, "the United States is not a signatory. . . ." *See Ganpat*, 66 F.4th at 583, n.6 (quoting MLC, 2006, preamble) (citation omitted).

where none exists. *See Bonilla*, 2023-00928, p. 4, 382 So.3d at 66 (citation omitted).

"A forum selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship." *Fidelak v. Holmes European Motors*, *L.L.C.*, 2013-0691, p. 3 (La. 12/10/13), 130 So.3d 851, 853. Under Louisiana law, a forum selection clause shall be enforced unless the opposing party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching …. [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 2013-1977, p. 17 (La. 7/1/14), 148 So.3d 871, 881 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513) (1972)).

Mr. Refaey maintains that Liquimar Tankers is liable for his claims of general negligence; maintenance and cure; and breach of contract claims under General Maritime Law. His petition references Evridiki as the owner; however Liquimar Tankers concedes to operating/managing the vessel for Evridiki. Based upon our *de novo* review, we find that the general, ordinary and plain language of the forum selection clause best defines "Shipowner" as the owner of the ship. *See* La. C.C. art. 2047. Considering the fact that Liquimar Tankers is the operator of the ship, the forum selection clause does not apply to Mr. Refaey's claims against Liquimar Tankers. Accordingly, the trial court erred in granting the exception of improper venue.

*Venue*

As we have determined that the forum selection clause does not apply, we now address the remaining issue of venue. Liquimar Tankers' exception of improper venue contends that the accident occurred in international waters. In support of this contention, Liquimar Tankers attached the vessel's geographical location on December 16, 2022 – the date on which the alleged injury occurred – and an affidavit of a Liquimar Tankers' representative. It also maintains that Mr. Refaey failed to plead that alleged misconduct occurred in Orleans Parish. In opposition to the exception of improper venue, Mr. Refaey asserts that venue is proper in Orleans Parish because he was continuously denied care once the vessel was berthed in Louisiana.

"Venue means the parish where an action or proceeding may be properly brought and tried under the rules regulating the subject." La. C.C.P. art. 41. A party may object to improper venue by a declinatory exception. La. C.C.P. art. 925(A)(4). To determine proper venue, the trial court takes the allegations in a plaintiff's petition as true. *Scott Vicknair, LLC*, 2024-0512, p. 9, ___ So.3d ___, ___, 2025 WL 798593, at *5 (citation omitted). "If the grounds for an objection of improper venue do not appear on the face of the plaintiff's petition, the burden is on the defendant to offer evidence in support of his position. *Id.* (quoting *Elliott v. Amato & Creely*, 2005-0376, p. 5 (La.App. 1 Cir. 3/29/06), 934 So.2d 779, 782).

The general rules of venue are set forth in La. C.C.P. art. 42. "The Supreme Court has observed that 'plaintiffs may choose any venue available under [La. C.C.P. art. 42] or any other supplementary venue provided by law that fits the particular circumstances of their claims.'" *Scott Vicknair, LLC*, 2024-0512, pp. 8-9, ___So.3d ___, ___, 2025 WL 798593, at *4 (quoting *Cacamo v. Liberty Mut.*

*Fire Ins. Co.*, 1999-3479, p. 5 (La. 6/30/00), 764 So.2d 41, 44). A plaintiff seeking to invoke a supplemental venue provision is required to allege sufficient facts to prove that the chosen venue is proper. *Scott Vicknair, LLC*, 2024-0512, p. 9, ___ So.3d ___, ___, 2025 WL 798593 at *5 (citation omitted). La. C.C.P. art. 74, the applicable supplemental venue provision, provides in pertinent part, "[a]n action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained."

Mr. Refaey's petition states that venue is proper in "Orleans Parish because the sued upon negligence and damages occurred and were sustained in the district of this Court." The petition further alleges that he was denied care once the vessel was "berthed" in Louisiana. He also maintains that he was ordered to stay inside his cabin when two United States Coast Guard agents boarded the vessel. He was not permitted to speak with the Coast Guard agents and was denied medical care, for his injured finger, until January 10, 2023 when he received medication at a clinic in Marrero, Louisiana.

The facts alleged in the petition are vague and do not indicate where the alleged misconduct occurred and/or where the damages were sustained. Rather, the petition merely states that the misconduct occurred once the "vessel [was] berthed in Louisiana." Although the evidence indicates the injury to Mr. Refaey's hand occurred in international waters, the petition alleges that he was denied care and actively hidden from Coast Guard agents once the vessel was "berthed" along the Louisiana shoreline. However, we are unable to discern if Orleans Parish is the proper venue from the petition alone. "When the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or

10

other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court." La. C.C.P. art. 932(A). The record demonstrates that Mr. Refaey has identified additional facts that could be plead to establish the proper venue if granted leave to amend his petition. Accordingly, we remand the matter to the trial court to allow Mr. Refaey an opportunity to amend his petition in accordance with La. C.C.P. art. 932(A).

## Conclusion

After a *de novo* review, the general, ordinary and plain language of the forum selection clause dictates that the "Shipowner" is defined as the owner of the vessel, Evridiki. We further find that the employment agreement's forum selection clause does not apply to Mr. Refaey's allegations against Liquimar Tankers. Thus, the trial court erred in granting the exception of improper venue filed by Liquimar Tankers. However, after accepting the allegations in the petition as true, we are unable to ascertain the proper venue for Mr. Refaey's claims. Accordingly, this matter is remanded to the trial court to allow Mr. Refaey an opportunity to amend his petition to allege specific facts supporting his contention that venue is proper in Orleans Parish. *See* La. C.C.P. art. 932(A); *LA Softwash AECS, LLC v. GPLA, LLC*, 2024-00052, p. 1 (La. 3/12/24), 380 So.3d 554, 555.

## Decree

Based on the foregoing, we reverse the trial court's judgment granting Liquimar Tankers' exception of improper venue, dismissing Mr. Refaey's petition without prejudice. This matter is remanded to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

11