## VOLUME 4

## CASES ARGUED AND DECIDED IN THE COURTS OF APPEAL OF LOUISIANA

AT TERM BEGINNING OCTOBER, 1925

No. 2509

Second Circuit

HOLMES v. HENDRICKS

(April 10, 1926.  Opinion and Decree)
(May 7, 1926.  Rehearing Refused)

*(Syllabus by the Editor.)*

1. Louisiana Digest — Prescription — Par. 14, 33, 34, 46, 57.

Under Article 3498 of the Civil Code when a person has a title to an immovable and possession conformable to it, he is presumed to possess according to the title and to the full extent of its limits.

2. Louisiana Digest—Prescription—Par. 20.

In order to acquire a prescriptive title to real estate under Article 3487 of the Civil Code the possessor shall hold in fact and in right as owner.

3. Louisiana Digest—Prescription—Par. 48.

In view of Article 3490 of the Civil Code a religious organization does not acquire title by prescription to the land surrounding its church by virtue of the fact that some portion of it has been used as a public or community cemetery.

4. Louisiana    Digest—Prescription—Par.
   59; Petitory and Possessory—Par. 38.

Where plaintiff in a petitory action not
   only proves the partition of the real
   estate in question giving her title to
   it, but also tracing her title to her
   father who acquired it under a deed
   recorded in 1876 and proved posses-
   sion under that deed down to 1925
   it is sufficient to prove her title good.

Appeal from the First Judicial District
Court of Louisiana, Parish of Caddo, Hon.
J. H. Stephens, Judge.

Action by Mrs. Carrie L. Holmes against
William N. Hendricks, et al.   There was
judgment for defendant and plaintiff ap-
pealed.   Judgment reversed, decreeing
plaintiff to be the owner of the land but
disallowing her demand for damages.

Long and McSween, of Shreveport, at-
torneys for plaintiff, appellee.

Herndon and Herndon, of Shreveport,
attorneys for defendants, appellants.

ODOM, J.   Plaintiff brought this suit
to be decreed the owner of the following
described triangular-shaped piece of land
situated in the west half of the southeast
quarter of Section four, township sixteen
north, range fourteen west, in Caddo par-
ish, Louisiana, to-wit:

"* * * commencing at the quarter corner
on the southside of Section 4, Township
16 North, Range 14 West, which corner
is marked by a Ford axle; thence north,
on half Section line, 1576.32 feet to a
point; thence east, 928.35 feet to the point
of beginning; thence south, 40 degrees 30
minutes east, 330.6 feet; thence west,
296.41 feet; thence north, 39 degrees 22
minutes east, 426.3 feet to the point of
beginning, the northwest side of which is
the southeast side of the Mansfield road,
and contains 1.12 acres."

She alleges that defendant has tres-
passed upon said property and has located
a building thereon without any right or

title to said land, despite her repeated
protests; and, further, that he has de-
stroyed a fence which was on said prop-
erty, valued at $200.00, and had destroyed
a road leading through the property,
worth $100.00; and she prays for damages
of $300.00.

As a basis of title, plaintiff alleged that
the property she now claims is a part
of a large tract of land acquired by her
father, Marion McMilland, at public sale
from the Succession of A. J. Pickens on
January 29, 1876, by deed duly recorded
in the Notarial records of Caddo parish
on November 21, 1876, and that all of said
land was transferred by her said father
to his wife, Mrs. Georgia A. McMilland,
on June 28, 1881; that both her father,
Marion McMilland, and mother, Georgia
A. McMilland, died later, the exact date
not being stated, leaving, as their sole
surviving heirs four children, to-wit: pe-
titioner and a sister, Mrs. Laura Pettaway,
and two brothers, Andrew J. McMilland
and Archie B. McMilland, who were, by
judgment of the district court rendered
on February 11, 1915, recognized as the
heirs of and placed in possession of all
the property belonging to their deceased
father and mother; that one of the broth-
ers, Andrew J. McMilland, died, without
issue, in 1915, whereupon petitioner and
her sister, Mrs. Pettaway, and their broth-
er, Archie B. McMilland, were, by judg-
ment of court dated March 16, 1915, recog-
nized as his sole heirs and sent into pos-
session of all of his property.

She further specially alleged that her
father and mother took actual, physical
possession of said land as owners under
said deed and continued to so occupy and
possess the same until their death, and
that subsequently thereto petitioner and
her brothers and sister continued to oc-
cupy and possess the same until their

death, and that subsequently thereto petitioner and her brothers and sister continued to occupy and possess said property down to the date of the filing of this suit, and that the possession of her father and mother and that of herself and sister and brothers was as owners, was continuous, peaceable, and uninterrupted to the date on which defendant took possession of that portion thereof now in dispute.

Plaintiff further alleged that the tract of land inherited by her and her sister and brothers was partitioned by notarial act in 1915, and that the particular property now in dispute was set apart to her in the act of partition.

Upon defendant's alleging that he was a tenant of the Summer Grove Baptist Church, a religious organization, that organization was made defendant by order of court and all subsequent proceedings were carried on against it.

An exception to the citation and an exception of no cause of action were filed in limine, both of which being overruled by the court.

The substituted defendant filed answer denying plaintiff's ownership of said land, and especially alleged that it owned the property under "good and sufficient title" obtained from Lee A. J. Hughes by deed in 1856.

It especially averred that it had been in undisturbed adverse, notorious and peaceable possession of said property from that time to this "having a graveyard on the same, and therefore pleads the prescription of ten and thirty years".

Subsequently defendant amended its answer by setting out a description of the land it claimed to own as follows:

"A certain tract of ground in the W½ of the SE¼ of Section 4, Township 16, Range 14 Caddo parish, Louisiana, to-wit: Beginning at the northeast corner of said 80 acres, thence south to a station designated as No. 2, on the enclosed plat to point for starting point; thence south 14 chains 50 links, thence west 5 chains 50 links, thence north 4.5 degrees west 6 chains and 27 links, thence north 36.5 degrees east 10 chains and 21 links to point No. 2 said starting, being 6 chains and 96 links from the corner of said 80 acres. All of which will be fully shown by plat and field notes filed and recorded herewith, said piece of ground being in Caddo parish, Louisiana, and known as the place where the Summer Grove Church now stands as per deed recorded in conveyance book "I", page 737 of the Recorder's Office of Caddo parish, Louisiana, on March 25, 1856."

There was judgment rejecting plaintiff's demand and recognizing defendant's ownership of the land described in its answer and the plaintiff appealed.

## OPINION

The exception to the citation and the exception of no cause of action were overruled by the district court and as no mention is made of the court's ruling by counsel in brief we take it that they are abandoned.

The small piece of land, 1.12 acres, in dispute, is situated in the W½ of the SE¼ of Section 4, Township 16 North, Range 14 West.

That particular Governmental subdivision of land, according to the deeds and plats in evidence, was acquired from the United States Government by John McCaws in 1848. There is no contention that it was not properly severed from the National domain.

John McCaws, the entryman, sold to Mrs. Elizabeth Hughes in 1848, and Mrs. Hughes and her husband subsequently sold or donated the same property to their son, Lee A. J. Hughes who, in turn,

sold to the Summer Grove Baptist Church, the defendant herein, the tract of land now claimed by defendant, in March, 1856. However, in the deed which Hughes made to the defendant, the tract of land is described as being in the W½ of the NE¼ of Section 4. There is no doubt that the land intended to be sold is in the W½ of the SE¼ of that section, for the deed recites that the small tract of land sold is "known as the place where the Summer Grove Baptist Church now stands", and it is clear from the maps and other evidence in the case that said church was situated in the W½ of the SE¼ of that section.

The land, therefore, which defendant intended to purchase and of which it took and held possession, is situated one-half mile south of the land described in the deed.

In arriving at our decision in this case, we have considered the description in the deed from Hughes to the Church as we think it was intended to read, which would place the land acquired by it in the W½ of the SE¼ of that section. Therefore the error in the description need not be further discussed.

At some time prior to 1856 the Summer Grove Baptist Church built a house of worship near the Shreveport-Mansfield public road in the W½ of SE¼ of Section 4 on land which it did not own.

Subsequently it purchased from Hughes the land on which the church was situated, described, for practical purposes, as beginning at a point on the said Shreveport-Mansfield public road and running north 36 degrees and 30 minutes east about 670 feet along the southeast edge of the said public road, thus giving the tract a frontage of 670 feet on that road, and running thence due south on the quarter section line a distance of 957 feet,

thence west 365 feet, and thence north to said road about 413 feet, to the place of beginning.

The small triangular piece of land claimed by plaintiff and now in dispute lies west of and adjacent to the above described lot and is enclosed by lines as follows:

Beginning on the public road at the northwest corner of the church lot, run thence north on the west line of said church lot to the southwest corner of said church lot, thence west 296 feet to the public road, thence north 30 degrees and 36 minutes east on the southeast edge of said road 426 feet to the northwest corner of the church lot.

It is therefore not included in the description of the lot purchased by the church; so that if the church owns the land in dispute its title is based upon prescription and not upon its deed.

The church building was located on the land described in the deed. It remained there and was used by the congregation until about fifteen years ago when it was torn down and removed and the congregation after its removal held their services in the public school building not far away. Whether the church lot proper was ever enclosed or not is not clear. One witness says he recollects a fence around it, others do not recall that it was ever fenced, and the one who recalls a fence does not know just where the fence was located. There is no testimony in the record that the land in dispute was ever enclosed as a part of the church lot or that it was ever occupied by the congregation for any purpose. In view of the fact that the church building was on the land described in its deed, and in the absence of any testimony to the contrary, we must assume that the defendant dur-

ing all the years from 1856 down to the date of the removal of the building occupied and possessed only the land within the calls of its deed.

Civil Code, Article 3498.

In fact the defendant, in answer, does not claim to own any land except that which is described in its deed. It sets up its deed and its chain of title and avers:

"* * * that it has been in the undisturbed, adverse, notorious, and peaceable possession of said property" through all the years.

"Said property" is the property described in the deed, and the defendant apparently claims no other. The suit was defended, therefore, upon the theory that the land in dispute was part of the tract which defendant had purchased.

But the testimony of C. D. Evans, the civil engineer and surveyor, who surveyed the land, and the plat made by him and filed in evidence, show that the land claimed by plaintiff is not embraced within the calls of the church's deed but is west of and adjacent thereto. The testimony of Evans, the surveyor, on that point is undisputed. Therefore, confining defendant to its technical plea of ownership, a further consideraiton of the case is unnecessary.

But giving defendant the advantage of all the testimony it introduced to establish its title to the land in dispute by prescription, it is no better off. In order to establish its title by prescription the defendant, over plaintiff's objection, introduced testimony showing that there is now and has been since the establishment of the church a graveyard there, a portion of which is on the land purchased by it and a portion of it on land adjacent thereto.

The theory upon which this testimony was introduced and admitted by the court is that the use of the land as a graveyard by the church establishes defendant's title thereto by prescription of thirty years.

Conceding that under some conditions a church could acquire property in that manner, yet the conditions as disclosed by the facts in this case can afford defendant no relief. The graveyard is not confined to any particular plot of ground but the graves are found scattered promiscuously over a considerable area. The graveyard was never enclosed and there was never any formal dedication of it by the owner. for the use of the church or for the use of the public generally. It is in evidence that at one time some one erected a fence between the pasture owned and used by plaintiff and the graveyard to keep the stock off the graves. That was within recent years and was not done by defendant. There is no evidence whatever that the church as an organization ever assumed control over the graveyard or that it ever claimed to own the land on which the graves are found, except that portion of it which is on the land described in its deed. It is not a church cemetery but a community burying ground used by any and all who desire to bury their dead there.

Doctor Resser, a witness called by defendant, who was 76 years old at the time of the trial and who was reared in that neighborhood and lived there practically all of his life, was asked:

"Was every man buried there a member of that church?

and he said:

"Oh, no, not all of the members, some of them were. It wasn't a church proposition at all, it was a sort of a public graveyard or cemetery."

Mr. P. P. Keith, 78 years old, and who has known the church and graveyard practically all his life, said that no one had to get permission to bury there. And there is no testimony whatever that the church ever exercised any dominion or control whatever over the graveyard.

On the other hand, plaintiff and her brother say that those who wanted space there always got permission from their father who owned the land.

We think it clear that defendant, as a religious organization, has not acquired title by prescription to the land surrounding its church by virtue of the fact that some portion of it has been used as a public or community cemetery. There is no testimony to the effect that there are any graves on the particular piece of land in controversy in this suit. The original defendant, Hendricks, has a store thereon and he testified that the nearest grave to the store is more than 100 feet away and other witnesses said that there were graves as near as 60 feet from the store. On just what part of the triangular piece of ground the store is situated, is not shown; therefore we are not able to determine whether there are any graves on this particular piece of land or not. The question of the rights of the individuals who have used this property as a burying ground is not here involved. The question here is whether the defendant, a religious organization, has acquired title by prescription by virtue of the fact that the land has been used as a burying ground, if, indeed, it may be said that any graves are found thereon.

When a parcel of land has been set apart by the owner thereof as a place for burial of the dead, those who use it for that purpose with the consent of the owner of the land may acquire the owner-ship of the plots so used by adverse possession.

Ulverman vs. Sheppard, 88 W. Va. 315, 106 S. E. 705.

"If one enters upon, sets apart and asserts an exclusive right to a plot of land as a family burying ground for a series of years, the use of the land for such purpose constitutes an actual possession. But where the possession is not under color of title, the holding will be confined to such part of the land as is covered by the graves."

1 Cyc. 994.

In order to acquire a prescriptive title to real estate, the possessor shall hold in fact and in right as owner.

C. C., Art. 3487.

The land in dispute in this case has not been held by the defendant either in fact or as owner. Defendant had title to certain described land and is presumed to have possessed according to its title.

C. C., Art. 3490.

Witnesses for defendant testified that it was their understanding that the defendant owned the small piece of land in controversy; but there is no testimony that it ever exercised any dominion or control over it and none to show that it even claimed to own it.

As to plaintiff's title.

The piece of land in controversy is in the W½ of SE¼ of Section 4, Township 16 North, Range 14 West. The whole of that subdivision was acquired by plaintiff's father from the Succession of A. J. Pickens at public sale in 1876. His deed was recorded in the Notarial records of Caddo parish on November 21st of that year. He took physical possession of the land under his deed at once and continued to occupy and possess it up to the date of

his death in 1914. His four children, the plaintiff being one of them, were recognized as his heirs and sent into possession of his succession by judgment of the district court in 1915. On March 16, 1915, the heirs, by notarial act, partitioned the property amongst themselves, this particular property being set apart to plaintiff who has possessed it ever since. The testimony and plats filed make it clear that the land in dispute is a part of the tract described and set apart to plaintiff.

Defendant contends that plaintiff has not established her title and he cites the case of Brown vs. Brown, 15 La. Ann. 169, in which it was held that it is not sufficient for the plaintiff in a petitory action to produce merely an act of partition.

"In the petitory action the plaintiff must himself produce title, not a mere paper title but a title which is traced back to an author who had in himself the right of property in the thing sold."

Plaintiff in this case did more than offer the act of partion. She traced her title back to her father who acquired under a deed recorded in 1876 and proved possession under that deed down to date. We think that is sufficient.

On the question of damages, we think plaintiff failed to make out her case on that point.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed and set aside and it is now ordered, adjudged and decreed that the plaintiff is the owner of the following described property claimed by her in this suit, to-wit:

"A triangular piece of land in the W½ of the SE¼ of Section 4, Township 16 North, Range 14 West, situated in Caddo parish, Louisiana, located and described as follows: Commencing at the quarter corner on the southside of Section 4, Township 16 North, Range 14 West, which corner is marked by a Ford axle, thence north on half section line, 1576.32 feet to a point; thence east 928.35 feet to the point of beginning; thence south 40 degrees 30 minutes east, 330.6 feet, thence west 296.41 feet thence north 39 degrees 22 minutes east, 426.3 feet to the point of beginning, the northwest side of which is the southeast side of the Mansfield road and contains 1.12 acres."

It is further ordered that plaintiff's demand for damages be rejected. Defendant to pay all costs.