996 So.2d 520 (2008)
The ESTATE OF Luke V. PETROVICH, Nebe Zibilich Petrovich, Anthony V. Petrovich, and Ann Bailey Petrovich
v.
JULES MELANCON, INC. and Jules Melancon.
No. 08-CA-185.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2008.
*522 G. Patrick Hand, Jr., Attorney at Law, Gretna, LA, for Defendant/Appellants.
Panel composed of Judges FREDERICKA HOMBERG WICKER, GREG G. GUIDRY, and ROBERT L. LOBRANO, Pro tempore.
FREDERICKA HOMBERG WICKER, JUDGE.
Defendants/Appellants Jules Melancon, Inc. and Jules Melancon [hereinafter referred to collectively as "Melancon"][1] devolutively appeal a July 5, 2007 judgment granting plaintiffs'/appellee's' Estate of Luke V. Petrovich, Nede Ziblich Petrovich, *523 Anthony V. Petrovich, and Ann Bailey Petrovich's [hereinafter referred to collectively as "Petrovich"] motion to withdraw funds deposited in the registry of the court and denying Melancon's exceptions. For the following reasons, we reverse, render, and remand to the trial court for further proceedings.

PROCEDURAL HISTORY AND UNDERLYING FACTS
Petrovich sought to withdraw $105,719.30, plus accumulated interest, from the registry of court. The State of Louisiana through the Department of Wildlife and Fisheries deposited these funds into the registry of the court pursuant to an April 10, 2002 court order. The funds represented compensation for two oyster bed leases related to the project known as the "Davis Pond Relocation Program." These two oyster bed leases, along with six other oyster bed leases, had been the subject of executory process proceedings.
Previously, on November 14, 1995, Petrovich sold eight oyster bed leases, including the two leases that the State ultimately reclaimed, to Melancon. The transaction was evidenced by three documents. One document, a sale and mortgage document, conveyed six leases for the price of $150,000 of which $30,000 was paid. The remaining balance was to be paid in 10 yearly installments of $12,000 conditioned to bear interest from maturity until paid at the rate of 8% per annum. The note stipulated that one half of all damages paid on behalf of said leases shall be payable to Petrovich for credit against said mortgage against the leases. Another sale and mortgage document conveyed two leases for the same price and terms. Finally, an additional mortgage of $20,000 was placed on two leases that were the subject of one of the sale and mortgage instruments.
In 2001, Petrovich sought to foreclose on the mortgages. As a result, executory process proceedings were instituted in two consolidated actions. The Petrovich plaintiffs alleged that Melancon was in default in the amount of $84,000, plus interest and attorney's fees. In the mortgage instruments, Melancon confessed judgment and waived appraisal. Petrovich, however, prayed for appraisal and executory process was ordered as prayed. In 2002, when Melancon received notice of the sheriff's sale, Melancon filed a petition to enjoin the sale. Melancon alleged that there was no default. Further, Melancon alleged that the default did not take into account credits on the indebtedness such as the credit due to damage to the oyster leases. The trial judge granted a temporary restraining order and later conducted an evidentiary hearing. At the close of the hearing, she granted a preliminary injunction and set the matter for trial on the permanent injunction. The trial judge, however, made no factual findings regarding the issues raised by Melancon. It was during the injunction proceedings that the trial judge ordered that the proceeds from the State be deposited in the registry of court. Trial on the request for a permanent injunction was set for June 4, 2003. On that day, the parties submitted the matter on memoranda, attached exhibits, and the transcript of the prior hearing. On November 5, 2003, the trial judge rendered judgment denying the permanent injunction and ordering the foreclosure to proceed. She gave no reasons for judgment. Thereafter, Petrovich requested the sheriff to proceed with the sale without benefit of appraisal. Petrovich purchased the leases at the sale for $1,782.
On July 13, 2005, Petrovich filed a petition for deficiency judgment and a motion to withdraw funds on deposit in the registry of court. Petrovich alleged that the *524 funds in the registry of court would partially satisfy the amount owed. Melancon filed an exception to the use of a summary proceeding to satisfy a deficiency judgment. Later, Melancon filed an exception of no cause of action, asserting that since the property was sold without benefit of appraisal, Petrovich was not entitled to a deficiency judgment. Thereafter, Petrovich filed a motion to amend its petition to remove all references to a deficiency judgment. Instead, Petrovich now alleged that the funds in the registry of the court were "substitute collateral" for certain oyster leases, which were the subject of the vendor's lien and privilege in the prior pleadings filed in this matter. The motion to withdraw funds matter was submitted on memoranda.
On July 5, 2007, the trial judge granted the Petrovich petition to withdraw the funds and she denied Melancon's exceptions. On July 11, 2007, the trial judge ordered the Clerk of Court to disperse to Petrovich the amount on deposit as the amount due to Petrovich for compensation for the leases, which were the subject of these executory process proceedings. She recognized that these leases were returned to the State of Louisiana, Department of wildlife and Fisheries in that project known as the "Davis Pond relocation program." She concluded that the amount on deposit was an exchange of collateral in a security instrument which formed the basis and part of the property subject to these executory process proceedings.

LEGAL ANALYSIS
On appeal, Melancon presents three arguments: (1) The Petrovich motion, no matter how styled, is in essence a petition for a deficiency judgment. (2) The motion should have been denied because the Petrovich plaintiffs could not use a summary proceeding to obtain a deficiency judgment. (3) The motion should have been denied because the Petrovich plaintiffs have no cause of action to obtain a deficiency judgment. (4) There was insufficient evidence to support entitlement to a deficiency.

"Substitution of Collateral"
Petrovich struck its request for deficiency judgment and pursued a claim to the funds in the registry of the court. However, the theory for recovery was based on a "substitution of collateral" theory. Petrovich asserted that the funds substituted for the mortgaged leases that the State reclaimed. Petrovich argued that Melancon lost any claim to the "substitute collateral" when Melancon defaulted on the note. Petrovich viewed the motion to withdraw funds as an expedient means of disbursing funds that now substitute as collateral for the mortgaged leases. Petrovich argued that since the leases were the subject of executory proceedings, it follows that the funds were as well. As such, the exceptions were no defenses to executory process.
Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law. La.C.C.P. art. 2631. In order for a plaintiff to prove his right to use executory process to enforce the mortgage, security agreement, or privilege, the Louisiana Code of Civil Procedure requires a plaintiff to submit, among other things, authentic evidence of a document, which creates the mortgage or privilege. That document must import a confession of judgment. La.C.C.P. art. 2635.
Petrovich presented no evidence that the funds on deposit were "substitute collateral." A review of the mortgage instruments reveals that there is no provision for *525 "substitution of collateral." Thus, the trial judge erred in awarding the entire amount in the registry of court to the Petrovich plaintiffs on this basis.

Deficiency Judgment
Although Petrovich amended the petition to strike allegations regarding a deficiency judgment, Petrovich's motion to withdraw was still based on an alleged deficiency following the sheriff's sale.
Our courts consistently look beyond the caption, style, and form of pleadings to determine from the substance of the pleadings the nature of the proceeding. Murrell v. Murrell, 42,070, pp. 3-4 (La. App. 2 Cir. 4/25/07), 956 So.2d 697, 700 (citations omitted). Thus, the caption of the Petrovich pleading does not control. Despite the Petrovich plaintiffs' arguments to the contrary, they were seeking entitlement to the funds as a result of money allegedly owed by Melancon on the notes. As such, they were in essence seeking a deficiency judgment.
"After a judicial sale under an executory proceeding, the creditor who seeks a deficiency judgment must plead and prove that the property was sold after appraisal in accordance with the codal and statutory laws and that the proceeds of the judicial sale were insufficient to satisfy the debt." First Acadiana Bank v. Bieber, 582 So.2d 1293, 1296 (La.1991) (citation omitted). "This proof is necessary to establish that the creditor has not been barred from pursuing a deficiency judgment against the debtor by operation of La.C.C.P. art. 2771 and La.R.S. 13:4106." Id. (footnotes omitted).
It is undisputed that the property was seized and sold without appraisal. Thus, La.C.C.P. art. 2771 and R.S. 13:4106 preclude Petrovich from obtaining a deficiency judgment.
La.C.C.P. art. 2771 provides:
Unless otherwise provided by law, the creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723.
La.C.C.P. art. 2723 provides:
Prior to the sale, the property seized must be appraised in accordance with law, unless appraisal has been waived in the act evidencing the mortgage, the security agreement, or the document creating the privilege and plaintiff has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for. There is no requirement that seized property subject to a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), be appraised prior to the judicial sale thereof.
In this case the appraisal was waived in the act evidencing the mortgage but the Petrovich plaintiffs prayed for appraisal and obtained a seizure as prayed for. It was later that the plaintiffs informed the sheriff to proceed without appraisal. Thus, the property was not sold "under the executory proceeding after appraisal in accordance with the provisions of Article 2723." La.C.C.P. art. 2771.
Moreover, La.R.S. 13:4107 provides a public policy against waiver of appraisal by the debtor as follows:
R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.
*526 La.R.S. 13:4106 provides:
A. Unless otherwise provided by law, if a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as otherwise provided by law or as provided in the next subsection.
. . . .
C. This Section is limited to judicial sales of mortgaged property and shall not apply to public or private sales of collateral subject to Chapter 9 of the Louisiana Commercial Laws or any similar statute.
"The purpose of the Deficiency Judgment Act is to protect a debtor from an overreaching creditor." Thomas v. Livingston Parish Sheriffs Office, 04-1822 (La.App. 1 Cir. 9/23/05), 923 So.2d 662, 666, writ denied, 05-2264 (La.3/31/06), 925 So.2d 1254. "It was intended to prevent the inequity inherent in a creditor foreclosing on a debtor's property without appraisal, buying the property in for a low price and thereafter obtaining a personal judgment against the debtor for a greater amount than if the property had been sold pursuant to a valid appraisal." Id. (citation omitted).
The Petrovich plaintiffs, relying on the exception provided in La.R.S. 13:4108.1, however, alleged that appraisal was unnecessary because the mortgage fell under the commercial law. They argued that a sale to a corporation, such as Melancon, could not by its nature be a consumer transaction.
La.R.S. 13:4108.1 provides:
A. As an exception to R.S. 13:4106 and 4107, if a mortgagee or other creditor holds a mortgage, pledge, security interest, or privilege which secures an obligation in a commercial transaction, the mortgagee or other creditor may collect from or pursue any debtor, guarantor, or surety for a deficiency judgment on the secured obligation whether or not the mortgagee or other creditor has foreclosed on all or any of the property and sold such property at a judicial, public, or private sale, with or without appraisal, regardless of the minimum bid, and whether or not the mortgagee or other creditor has acquired such property from any debtor, guarantor, or surety pursuant to a complete or partial giving in payment. However, other than with regard to a secured transaction subject to Chapter 9 of the Louisiana Commercial Laws, a mortgagee or other creditor may not pursue any debtor, guarantor, or surety for more than the secured obligation, minus the reasonably equivalent value of the property sold.
B. For the purpose of this Section, the terms "commercial transaction" and "reasonably equivalent value" shall have the following meanings:
(1) "Commercial transaction" means any transaction entered into primarily for business or commercial purposes.
(2) "Reasonably equivalent value" means the value that the owner and the mortgagee or other creditor of the property being sold or otherwise disposed of agree to attribute to the property for the purposes of reducing the secured debt.
"La.R.S. 13:4108.1 is inapplicable [in a case where] there is no evidence that *527 the parties entered into a debt reduction agreement or agreed to attribute a value to the property for this purpose." Citizens Sav. and Loan Ass'n v. Kinchen, 622 So.2d 662, 665 (La.1993). "Such an agreement is `crucial' and must be confected prior to the sale." Id. (citation omitted). "In the absence of such an agreement, the statute is inoperative." Id.
Petrovich presented no evidence of a debt reduction agreement that was confected prior to the sale. Therefore the "commercial transaction" exception to appraisal does not apply. As such, R.S. 13:4106(A) considers the debt "fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor."
Furthermore, the trial judge erred in denying Melancon's exception to the use of a summary proceeding. La.C.C.P. art. 2772 provides the procedure by ordinary process or a separate suit as follows:
A creditor may obtain a deficiency judgment against the debtor either by converting the executory proceeding into an ordinary proceeding as provided in Article 2644, or by a separate suit. In either case, the defendant must be cited, and all of the delays and formalities required in ordinary proceedings must be observed.
"Even if the creditor is entitled to pursue a deficiency judgment, however, the debtor still has all of the rights and defenses available to a defendant in an ordinary proceeding, because the creditor has not yet obtained a judgment against the debtor." First Acadiana Bank v. Bieber, 582 So.2d 1293, 1296 (La.1991). "Therefore, the creditor must additionally plead and prove the existence of the obligation giving rise to the debt and the grounds of non-performance on which the creditor bases the action." Id. (citation omitted).
In this case, the trial judge has never made factual findings as why Petrovich was entitled to the entire amount in the registry. The amount he may be entitled to is in dispute. Melancon correctly points out in brief that the Petrovich plaintiffs stipulated at the hearing on the injunction that Melancon paid $72,300. Furthermore, Melancon argues that they proved at the hearing that an additional $40,900 was paid to Petrovich. Thus, Melancon asserts that the $105,719.30 amount in the registry of court far exceeded the amount allegedly owed. Therefore, even assuming that the Petrovich plaintiffs were entitled to a deficiency judgment, no deficiency was proven in these summary proceedings.
Accordingly, for the foregoing reasons, the trial judge erred in awarding what was in essence a deficiency judgment.
Our conclusion that the funds are not "substitute collateral" and that Petrovich was not entitled to a deficiency judgment does not, however, end the inquiry. We now turn to a discussion regarding the nature of the funds on deposit.

Davis Pond Freshwater Diversion Project
According to the trial judge, the funds represented compensation for two oyster bed leases related to the project known the "Davis Pond Relocation Program." Petrovich indicated that these funds were from the State's reclamation of the oyster bed leases as a result of the "Davis Pond Freshwater Diversion Project." Melancon agrees that the funds represent the amount paid by the State in reclaiming two oyster leases.
In Louisiana, the State owns the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore. La.C.C. art. 450. In Avenal v. State, 03-3521 (La.10/19/04), 886 So.2d 1085, 1095, cert. denied, Avenal v. Louisiana, *528 544 U.S. 1049, 125 S.Ct. 2305, 161 L.Ed.2d 1090 (2005) (footnote omitted) (emphasis added), the Supreme Court explained:
The leasing of state-owned water bottoms to private parties for the purpose of oyster farming is governed exclusively by a specific statutory scheme. According to this statutory scheme, the State owns "all oysters and other shellfish and parts thereof grown [on the State's water bottoms], either naturally or cultivated, and all oysters in the shells after they are caught and taken therefrom ... except as provided in R.S. 56:4." La. R.S. 56:3. Further, the State owns all water bottoms "bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the State," and the State may not alienate these water bottoms. La. R.S. 56:3; La. Const. art. VII, § 14 (2004); Art. IX, § 3 (2004). However, in order to foster, cultivate, and protect the Louisiana oyster industry, the State has statutorily authorized the issuance of oyster leases to private parties.
La. R.S. 41:1225 authorizes the Department of Wildlife and Fisheries to grant oyster leases on State-owned water bottoms, as provided by statute. La.R.S. 41:1225; La. R.S. 56:4. Oyster bed leases "are subject to mortgage, pledge or hypothecation, and to seizure and sale for debt, as any other property rights and credits in this state." La.R.S. 56:423(E). 2006 La. Acts, No. 425, § 1, effective June 15, 2006 amended the statute. Section 3 of the act provided the "express intent of the legislature that this Act is interpretive, curative, and procedural and shall be applied both prospectively and retroactively." Among other things, the Act added the following language: "This exclusive use of water bottoms is subordinate to the rights or responsibilities of the state, any political subdivision of the state, the United States, or any agency or agent thereof, to take any action in furtherance of coastal protection, conservation, or restoration."
The sale of these leases occurred in 1995. In 1997, as amended in 2000 and 2006, the legislature enacted La.R.S. 56:432.1 to address problems that were caused by the State's reclaiming leases for its coastal restoration programs. The statute was last amended in 2006 by 2006 La. Acts No. 425, § 1. The statute is currently named the "Oyster Lease Acquisition and Compensation Program." This is the same Act that amended R.S. 56:423, in which the legislature expressed its intent that Act was "interpretive, curative, and procedural and shall be applied both prospectively and retroactively."
The Act provides that the Department of Natural Resources shall develop a program, subject to the requirements and conditions of that section, for the acquisition and compensation for oyster leases necessary for the construction or maintenance of the project for coastal protection, conservation, or restoration. La.R.S. 56:432.1(A). "Upon the effective date of the acquisition, possession of the affected acreage shall revert to the state, free and clear of any lease or other obligation or encumbrance." La.R.S. 56:432.1(B)(1)(b). Thus, in accordance with the constitutional mandate that the State cannot alienate water bottoms, the legislature interpreted it acquisition legislation by recognizing that the State's reclaiming of oyster leases could only be free of any encumbrance such as a mortgage. Otherwise, the property could be seized and sold at a sheriff's sale.
La.R.S. 56:432.1(B)(3) provides that the Department of Natural Resources shall pay to the leaseholder the determined amount of compensation, except for and less any amount due on recorded liens and *529 encumbrances to be paid out of said proceeds. If the Department is unable to contact the leaseholder, then the Department shall transfer funds in the amount of the determined compensation, except for and less any amount due on recorded liens and encumbrances to be paid out of said proceeds, to a trust account. Any amount due on a recorded lien or encumbrance shall be paid directly to the holder. La. R.S. 56:432.1(B)(3). Thus, the legislature recognizes that the leaseholder and the mortgage holder each have an interest in the amount paid to reclaim the oyster leases.
The trial judge had no authority to award any portion of the deposit until there had been a final determination of the Petrovich plaintiffs' compensable interest, if any. The record in the case before us is far from satisfactory. It is unknown whether the State had issued a joint award and the money had been paid into the registry of the court to the joint credit of the leaseholder (Melancon) and the mortgagee (Petrovich). It is also unknown if, at the time of the State's acquisition, the remaining leases were adequate as security for the debt such that Petrovich's security was not impaired by the sale to the State of these two leases. Since Petrovich did not seek an appraisal as prayed, it is unknown whether the remaining property that was not acquired by the State was sufficient to satisfy the mortgage. The mortgage makes no provision for payment of the proceeds of a State acquisition award in the event of a partial taking.
The present case is analogous to State, by Com'r of Transp. v. Kastner, 179 N.J.Super. 613, 615, 433 A.2d 448, 449 (1981). In that case, as in the present one, there had been a partial taking by the State of the mortgaged property. The State deposited funds with the court as estimated compensation for the property acquired. In Kastner, neither party disputed the fact that the value of the remaining property was at least twice the amount of the mortgage. The mortgagees of the property, however, sought to withdraw the full amount of the deposited funds. The New Jersey court held that "in the event of a partial taking of property and the granting of a condemnation award, the lienholder cannot enforce his lien against the condemnation award unless the remaining property is of insufficient value to satisfy the lien." Id. Thus, the mortgagee must prove impairment of collateral.
We apply Kastner to these facts. In this case, Petrovich is not entitled to a deficiency judgment. To allow Petrovich to receive the entire amount paid by the State would circumvent the Deficiency Judgment Act. Therefore, we hold that the Petrovich plaintiffs cannot enforce their lien or mortgage against the acquisition award unless the remaining property is of insufficient value to satisfy the lien or mortgage. Since the trial judge never made this determination, we remand this case to the trial judge to conduct an evidentiary hearing. We instruct the trial judge to determine the following: (1) Did the parties have an agreement with the State regarding the distribution of the proceeds? (2) If there was an agreement, what was the nature of that agreement as to each party's interest in the funds? (3) What amount, if any, is due each party from the proceeds? (4) In the event that the Petrovich plaintiffs prove entitlement, did they prove that the remaining property is of insufficient value to satisfy the lien or mortgage in order to justify receipt of any funds?

DECREE
The July 5, 2007 judgment granting the Petrovich motion to withdraw funds deposited in the registry of the court, namely *530 $105,719.30 plus accumulated interest, and denying the Melancon exceptions is hereby reversed. Accordingly, judgment is hereby rendered ordering that the Petrovich plaintiffs deposit the sum of $105,719.30, plus accumulated interest into the registry of court within 10 days of this opinion. This matter is remanded for further proceedings, consistent with the views expressed herein.
REVERSED, RENDERED, AND REMANDED.
NOTES
[1] Wherever it is considered necessary to refer to Mr. Melancon individually, such party will be referred to as "Mr. Melancon."