STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
10-88

STEPHANIE NAVARRO

VERSUS

ALI GHALAMBOR AND FARZANEH K. KHAJEH

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20086229
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, J. David Painter, and David E. Chatelain[*], Judges.

**AFFIRMED AS AMENDED.**

**Steven J. Oats**
**Rene D. Guidry**
**Karen T. Bordelon**
**100 E. Vermilion St., Ste. 400**
**Lafayette, LA  70501**
**Counsel for Defendants-Appellants:**
    **Ali Ghalambor and Farzaneh K. Ghalambor**

**John S. Irion, Jr.**
**P.O. Box 3412**
**Lafayette, LA  70502**
**Counsel for Plaintiff-Appellee:**
    **Stephanie Navarro**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Temporare.

**PAINTER, Judge**.

Defendants-Appellants, Ali and Farzaneh Ghalambor, appeal the judgment of the trial court enforcing a lease-purchase agreement. For the following reasons, we amend the judgment of the trial court and affirm as amended.

## FACTS

Plaintiff, Stephanie Navarro, rented a house located at 124 Twin Oaks Blvd. in Lafayette, Louisiana from Defendants. The parties entered into a "Lease Purchase Agreement" drafted by Mr. Gahlambor and his attorney which Navarro signed in December 2007, and the Gahlambors signed in January 2008. The lease included an option for Navarro to purchase the property as follows:

> 4. OPTION TO PURCHASE. Lessor hereby grants to Lessee an option to purchase the Leased Property, which may be exercised at any time during the term of the lease for the sales price to be determined by the greater of the appraised value of the property at the time Lessee exercises his right to purchase the leased property or ONE HUNDRED SIXTY THOUSAND DOLLARS ($160,000.00).
>
> (a.) If Lessee desires to exercise her preemptive right to purchase the Leased Property, EIGHT HUNDRED DOLLARS ($800.00) per month of each full month's rent that has been paid by Lessee to Lessor under this Lease will be applied to the purchase price, and the amount that Lessee will be required to pay Lessor will therefore be an amount equal to the sales price less $800.00 per month of all rentals that have been paid by Lessee to Lessor under this Lease through the date of purchase.
>
> (b.) If Lessee desires to exercise her preemptive right to purchase the Leased Property, she shall so notify Lessor at or before the termination of this Lease in accordance with the provisions of this Lease for the manner of giving notice. The sale transaction contemplated herein shall take place no later than 45 days after said giving of notice. The Lessor shall bear his costs of closing, which are customarily associated with mortgage cancellation fees and property tax prorations only, and the Lessee shall bear her costs of closing, including closing attorney's fees. Should Lessee not exercise her option to Purchase the property during the term of this lease, Lessor will return an amount equal to $650.00 times the number of $2,000.00.00 monthly payments

1

made during the term of the lease, less and except any amounts owed to Lessor representing credits given to Lessee for prior lease payments.

(c.) If Lessee exercises her right to purchase the Leased Property, she hereby agrees that the property will be transferred in "as is" condition, and Lessee agrees to relieve and release Lessor from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown and particularly for any claims or cause of action for redhibition pursuant to Louisiana Civil Code Articles 2520, et seq., or for diminution of purchase price pursuant to Louisiana Civil Code articles 2541, et seq.

The lease provided the following with regard to giving notice:

18. NOTICES. Service of all notices under this agreement shall be sufficient if given personally or mailed via registered mail to the party involved at their respective addresses, or at such address as such party may provide in writing from time to time. Any such notice mailed to such address shall be effective when deposited in the United States mail, duly addressed and with postage prepaid.

On July 28, 2008, Plaintiff sent a letter to Defendants containing the following language:

Enclosed is my August 2008 lease/purchase payment. At this time, I would also like to begin to move forward with the purchase of the property. With school beginning around the corner, I realize that you will probably be very busy as I will be also. Timing wise, I was hoping that it would be possible far us to close by the end of August or September at the latest. Please let me know when you would like to meet or, you may email me at the above email address with any correspondence if that is more convenient for you.

I am looking forward to the possibility of purchasing this house from you and Ferri. Having lived here for ten years now, it definitely feels like home. Armando and I would also like to once again thank you in advance for all of your kindnesses shown towards our family over the years.

On September 22, 2008, Plaintiff hand delivered another letter to Defendants, as follows:

Enclosed is a copy of the appraisal ordered by my mortgage company, USAA. The value of the property based on this appraisal is

2

$168,000.  In order to get this closed in a timely manner, I need a Purchase Agreement from  you  for my mortgage company.  I am sure that your have very accurate records, but I have attached a copy of my lease/purchase payments for your convenience.  According to my records, the selling price should be $168,000 less equity paid of $13,600 (17 months x $800) for a final sales price $154,400.

USAA has a closing date available on October 8, 2008.  I would like to get them the Purchase Agreement as soon as possible so that we can make this closing date.  Please let me know as soon as you can if this is not possible.

Again, I know that you are busy, but I would like to get this at your earliest convenience.

The attached appraisal valued the property at $168,000.00.

On October 7, 2008, Defendants sent correspondence to Plaintiff as follows:

I have considered the appraisal that you provided last week for the purchase of the property located at 124 Twin Oaks Blvd.  The appraisal of $168,000 is not acceptable to me as it is deficient in many respects. I have since obtained an expert opinion who has valued the property at $185,000-190,000.

I will be happy to work with you toward a fair and amicable purchase price for the property.  As I have done in the past, I will continue to do my best to be helpful to you and your family.

Should it be necessary for any further discussion in this matter and for keeping it at a civil and professional level, I would be happy to have such conversation only with you.  Please let me know if I can assist further.

On October 9, 2008, counsel for Plaintiff sent a letter making demand on Defendants to go forward with the sale.  On October 31, 2008, suit was filed.

After a trial on the merits, the trial court found in favor of Plaintiff ordering Defendants to sell Plaintiff the property for $168,000.00 less credits applicable under provision 4(a) of the lease-purchase agreement and ordering Defendants to pay Plaintiff the sum of $7,500.00 plus interest, representing the rent Plaintiff had to pay as a result of not being able to buy the house.  Defendants appeal.

3

**DISCUSSION**

*Exercise of Option*

Defendants assert that the trial court erred in finding that, because the July 28 letter was not sent by registered mail, it did not trigger the forty-five day deadline for closing the sale. Defendants argue that since they admit receipt of the July 28 letter, the deadline was triggered and, because no closing occurred within forty-five days, they are not obligated to sell the property to Plaintiff.

The trial court's determination with regard to whether an option has been exercised because of the grantee's failure to comply with the form and time requirements specified in the option contract is a finding of fact that may not be disturbed on appeal unless clearly wrong. *Casey v. Nat'l Info. Servs., Inc.*, 04-0207 (La.App. 1 Cir. 6/10/05), 906 So.2d 710, *writ denied*, 05-2210 (La. 3/24/06), 925 So.2d 1235.

The court in *Casey* further found that the plaintiff's failure to exercise her option in the form contemplated by the contract, i.e. via registered mail, rendered an attempt to exercise the option ineffective:

> The contract clearly states that Casey had to send a registered letter to NIS in order to exercise her option to purchase the property. This condition indicates that the parties contemplated a certain form of acceptance. Thus, the option to purchase would not be considered to have been exercised until it had been accepted in that form, i.e., a registered letter. Since the option is considered not to have been exercised until a registered letter had been sent to NIS and because the date on which her right to exercise the option expired was May 4, 1999, we are unable to find the trial court manifestly or legally erred in finding that Casey failed to prove that she had exercised her option in accordance with the form contemplated by the parties.

*Casey*, 906 So.2d at 720 (footnote omitted).

4

In this case, the Plaintiff failed to use the proper form to allow the July 28 letter to be considered as exercise of the option, and the letter does not clearly indicate a desire to exercise the option. Particularly, the lack of mention of a price at which she wass willing to purchase the property, considering that the price was to be fixed by an appraisal, along with the fact that the letter was not in the form required for exercise of the option, indicates that the letter was not intended as such. The September 22 letter, on the other hand, was presented in the manner indicated by the agreement and indicated the price at which she was willing to exercise the option.

In light of this evidence, we find no error in the trial court's determination that the July 28 letter did not act as an exercise of the option to purchase so as to trigger the forty-five day deadline.

*Delay Damages*

Defendants next assert that the trial court erred in awarding delay damages from October 7, 2008, rather than from October 31, 2008, the date on which Defendant was put in default by the filing of suit. Plaintiff counters that these damages were not imposed for a delay in performance but rather for non-performance, citing La.Civ.Code art. 1994 which states that: "An obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." Plaintiff asserts that damages other than delay damages are owed from the time the obligor has failed to perform. La.Civ. Code art. 1989.

The trial court awarded $7,560.00 in damages representing rent Plaintiff was required to pay due to Defendants' failure to perform. The trial court's reasons for judgment indicate that this amount represents the six months of rental payments of

5

$1,200.00 per month from October 1, 2009 through March 31, 2009 plus the nine days of April until Plaintiff closed on another house.

However, since no closing was ever set, we cannot set a date certain on which Defendant failed to perform. However, on October 9, 2008, counsel for Plaintiff made a formal demand for performance, which constitutes a putting in default. La.Civ.Code art. 1991. Therefore, we amend the trial court's judgment to award damages for rent paid from October 9, 2008, until Plaintiff purchased another house on April 9, 2009. Therefore, we reduce the award of damages by $360.00 representing nine days rent from October 1 through October 9 at the monthly rate of $1,200.00 for an award of $7,200.00.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed in part and amended in part to reflect a reduction in the award of damages by $360.00. Costs of this appeal are to be paid by Defendants.

**AFFIRMED AS AMENDED.**