STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-583


SHEILA J. MARTIN, ET AL.

VERSUS

CARLOS NOLEN, ET UX.



**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2014-293
HONORABLE E. DAVID DESHOTELS JR., DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Shannon J. Gremillion, Judges.


AFFIRMED.



John E. Demoruelle
Attorney at Law
P. O. Box 839
Oberlin, LA 70655
(337) 639-2641
COUNSEL FOR DEFENDANTS/APPELLEES:
    Carlos Nolen
    Linda Martin Nolen

**Donald L. Mayeux**
**Attorney at Law**
**P.O. Drawer 1460**
**Eunice, LA 70535**
**(337) 457-9610**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Sheila J. Martin**
    **Amy Martin**
    **Jeff Melder**

**Jonathan C. Vidrine**
**Jonathan Clyde Vidrine & Associates**
**P. O. Drawer 1019**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Sheila J. Martin**
    **Amy Martin**
    **Jeff Melder**

**GREMILLION, Judge.**

The plaintiffs, Sheila Martin, Amy Martin, and Jeff Melder, appeal the trial court's judgment denying their claims for damages and contempt. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sheila and Amy own a 140-acre tract of land in Allen Parish in indivision with their four siblings, one of which is the defendant, Carlos Nolen's, wife, Linda Martin Nolen. Sheila and Jeff Melder graze cattle on the land.[1] They allege various actions by Carlos which have led to the death of the cattle and caused them damages. A succession has never been opened to partition the land.

The plaintiffs filed suit in July 2014 for damages and injunctive relief claiming that Carlos was tearing down fences and gates, damaging gates, causing the loss of cattle, and otherwise interrupting their peaceful possession of the property owned by Sheila and Amy. In October 2014, the trial court granted a preliminary injunction prohibiting the damage of the property. The defendants filed a peremptory exception of res judicata. In January 2015, plaintiffs filed a rule for contempt and opposition to defendants' exception of res judicata. Following a February 2015 trial, the trial court denied defendants' exception of res judicata and denied plaintiffs' contempt motion. It further denied plaintiffs' claim for damages. The trial court's March 2015 judgment held:[2]

---

[1] Sheila and Jeff, who have never married, are the parents of three children. They live across the way from each other although Melder will sometimes stay at Sheila's house.

[2] The validity of this "temporary" partition is not at issue in this case. No party assigned it as error or briefed any complaints relating to it. The trial court noted in its oral reasons at the conclusion of the trial:

> The court does encourage the parties to go to court and do the succession and partition the property to where it would be more equitable. But for now the

[P]laintiffs are allowed approximately 2/3 of the property for the use of grazing their cattle and other animals and defendants are allowed use of approximately 1/3 of the property for the use of grazing of their cattle and other animals. The boundary line is established as being a horizontal line running east and west to the eastern and western borders of the property in question and designated on a map as being the northern portion of the property in question, said map designated as Exhibit P-17 attached hereto. The plaintiffs are to have exclusive use and grazing rights of the southern 2/3 of the property bounded on the north by the designated line and the defendants have the exclusive use and grazing rights of the 1/3 of the property bounded on the south by the same designated line.

**IT IS FURTHER ORDRERED, ADJUDGED AND DECREED** that defendants will return to the plaintiffs four of the six gates that defendants took from the property in question.

Plaintiffs now appeal and assign as error:

1. The Trial Court erred in denying plaintiffs' claim for contempt of court.

2. Plaintiffs' claim for damages.

## DISCUSSION

Plaintiffs argue that Carlos is responsible for the damages he caused and should have been held in contempt. At the conclusion of the trial, the trial court stated that this matter should have been handled as a succession so that the property could be finally partitioned and the parties could enjoy exclusive use of their property, but that was not the case. The trial court further stated:

The court is convinced that there is sufficient proof that Mr. Nolen or Mr. Carlos Nolen removed a red car from the gap but replaced, the car was used as a gate so to speak but there's nothing in the judgment, in the written judgment that is prepared by the attorneys that stated that the car cannot be removed and replaced with a gate. It's almost like, no harm, no foul. The cows, the horses all remained on the premises. None of them escaped. As a matter of fact if that gate or that car was used to separate the horses from the cattle it may have served to avoid

court is trying to accommodate the parties so that when they go back home that some of this tension can be eased up a little bit. It's not a permanent fix, it's a temporary fix and hopefully the parties can get together and try [to] work their differences out.

2

conflict. So the court does not find that there is a valid contempt and dismisses the claim for contempt. Also what is alleged or asked for is a money, a suit for damages for money. For money damages. It's been claimed by the petitioner, petitioner's Miss Sheila and Jeff Melder that they lost one cow and three calves, maybe each of them. Although it's been stated also by the plaintiffs that they feel that the cows many have died because they ate plastic, that's speculation, that's not proof by preponderance of the evidence and so the court cannot find in plaintiff's favor that the cows died purposely at the hands of the defendants and that has to do with, there's also allegations that they may have died of natural causes or starved to death. So there's not been sufficient proof that the cattle died or were lost at the hands of defendants and any money judgment requested against the defendants is denied.

We review factual findings of the trial court using the manifest error standard of review. *Stobart v. State, through Dept. of Transp. & Develop.*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). We use a two-part test to determine if reversal is warranted: (1) the appellate court must find that there is no reasonable factual basis in the record for the trial court's finding, and (2) the finding is clearly wrong (manifestly erroneous). *See Mart v. Hill*, 505 So.2d 1120 (La.1987).

Melder testified that he had lost one cow valued at approximately $1,000.00 and the three calves it would have borne. He thought Carlos was purposely leaving bags of bread in the pasture knowing the cows would eat it and it would kill them. He said he found the bags behind Carlos' house. He further testified that a red car belonging to the Nolens was put in place of a gate in order to block them from accessing their property. Melder said that Carlos prevented Melder's cows from eating grass in areas where they used to, damaged a barn, blocked access to their property, and destroyed gates.

Sheila testified that one of her black angus cows went missing and when they found her she was badly decomposed. She said she had also lost three calves,

which she attributed to Carlos. She said it had been "misery" since Carlos and her sister moved in and that they left gates open on purpose, which caused the cow to become lost. She further said their gates were stolen. Sheila said the cows were hers, as her mother's cows were all sold before her to death to finance a logging operation. However, she did not have any proof of ownership of the cows.

Amy Martin Winegart testified that Carlos repeatedly opened the windows of her mother's house and took all of her belongings out of a storage house. Although Amy suffered no damage related to the cattle, since they were not hers, she had "high heart rate," because her defibrillator shocked her. She denied ever seeing Carlos or Linda move, remove, set up, or alter any gates.

Carlos testified that he and his wife moved onto the property in May 2013. Carlos admitted to taking six gates, but he said he took them because "they was loading and stealing the family cows and I was trying to stop them." Carlos also claimed that the cows that Sheila claimed to own are owned in indivision because they were Sheila's and Linda's mother's cows. Carlos said that there were nineteen gates total that were taken and he took six and that "they" know who took the others. He further said, of the person that took the gates, that "[t]hey followed him to his house and took pictures. We're kin to them I'll put it that a way." He said Phillip Martin (Sheila, Linda, and Amy's brother), when he was not in jail, had taken some of the gates.

Steven Martin, another sibling, stated that there were eighty head of cattle at the time the logging operation ended and that "they" sold them.

Dennis Whitaker, a neighbor, estimated that there were thirty-six to forty cattle at the time of the mother's death. Whitaker said he saw five or six cattle that died from starvation and that he dragged two of them away from his house. He

4

said that since the lawsuit began, the cattle number around twenty-five or twenty-six.

Greg Martin, another sibling co-owner, said his mother had cattle right before she died, but he did not know how many.

Because all of these siblings own the property in indivision, each is allowed to possess the property, and shares are presumed to be equal. *See* La.Civ.Code art. 797. It is true that a co-owner is liable to another co-owner "for any damage to the thing held in indivision caused by his fault." La.Civ.Code art. 799. Based on the testimony at trial, it is impossible to say that the trial court erred in its finding. Clearly, there is much dispute as to who owns the cattle in question and who was damaging the gates and for what reason. Further, the trial court found there was insufficient evidence to prove that Carlos was the cause of the death of the cattle. Accordingly, the trial court's findings are reasonable, and this assignment of error is without merit.

### Contempt

The trial court is vested with great discretion in determining whether a party should be held in contempt, and we will only reverse its decision if we find an abuse of discretion. *Mill Creek Homeowners Ass'n, Inc. v. Manuel*, 04-1386 (La.App. 1 Cir. 6/10/05), 916 So.2d 271. There was some testimony about the red car, whether a justice of the peace told Carlos to move it, and whether moving it would have made any difference regarding access. Carlos did testify that he owned the red car. However, the record reveals no abuse of discretion in light of the trial court's factual findings. We find no error in the trial court's finding declining to find Carlos in contempt.

## CONCLUSION

These disputes could be laid to rest if the parties opened the succession and partitioned the property. In the meantime, the trial court has laid out a right of use it deemed to be in the parties' best interests. Based on the testimony at trial, we cannot say that the trial court erred in not awarding damages as there is little certainty over who owns the cattle, and reasonable people could find that plaintiffs failed to prove that Carlos caused damage to the property owned in indivision. Nor did the trial court abuse its discretion in not finding Carlos in contempt. Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are assessed against, plaintiffs, Sheila Martin et. al.

**AFFIRMED**.